No. 12-3972

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
*FOR THE EIGHTH CIRCUIT*

———————◆———————

*UNITED STATES OF AMERICA*
*Appellee*

vs.

MICHAEL GOODALE
*Appellant*

———————◆———————

APPEAL FROM THE NORTHERN DISTRICT OF IOWA
No. 3:12-cr-03011-LRR-1
*Hon. Linda Reade, Judge*

———————◆———————

**APPELLANT'S BRIEF**

———————◆———————

MARK C. MEYER
425 2nd Street SE, Suite 1250
Cedar Rapids, Iowa 52401
319-365-7529
legalmail@markcmeyer.com

ATTORNEY FOR APPELLANT

---

Appellate Case: 12-3972    Page: 1    Date Filed: 04/02/2013 Entry ID: 4020681

# I.  SUMMARY AND REQUEST FOR ORAL ARGUMENT

> *You must understand, sir, that a person is either with this court or he must be counted against it, there be no road between. This is a sharp time, now, a precise time—we live no longer in the dusky afternoon when evil mixed itself with good and befuddled the world. Now, by God's grace, the shining sun is up, and them that fear not light will surely praise it. – Mr. Danforth in Act III, The Crucible, by Arthur Miller.*

Mr. Goodale is a young man sentenced to serve a sentence of the rest of his life in prison, without parole, for transporting a boy under age 12 across a state line on more than one occasion with the intent to commit a sex act.  Mr. Goodale had no prior convictions for sexual abuse or a crime of violence.  His crime, as alleged, did not involve force, coercion, or non-consensual acts.  The sex acts alleged involved oral sex and masturbation, not rape.   There is no evidence that either of the boys who claimed to be molested involved suffered and physical or psychological harm.  Mr. Goodale asserts that his sentence is unreasonable; that the evidence is insufficient to uphold his convictions; and that evidence that should have been suppressed was admitted against him at trial.

Appellant requests that he be granted 15 minutes of oral argument before the Court.

i

# II. TABLE OF CONTENTS

I.     SUMMARY AND REQUEST FOR ORAL ARGUMENT ...............I

II.    TABLE OF CONTENTS ..................................................... II

III.   TABLE OF AUTHORITIES ...............................................IV

IV.   STATEMENT OF JURISDICTION ...................................1

V.    STATEMENT OF THE ISSUES ........................................1

VI.   STATEMENT OF THE CASE ............................................3

VII.  STATEMENT OF FACTS ..................................................5

VIII. SUMMARY OF THE ARGUMENT .................................11

IX.   ARGUMENT ...................................................................13

   A.  EVIDENCE OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT WAS USED AGAINST MR. GOODALE AT TRIAL. ...................................................13

     1.  *Standard of Review* ....................................................*13*

     2.  *Police seized and searched a computer without a warrant* .........*14*

       a)   There was no consent by Mr. Goodale ......................................16

       b)   Even if there was probable cause to seize the computer, there was no lawful basis to conduct a search...........................................................16

       c)   The private search exception to the Fourth Amendment does not apply .. 17

       d)   The fruits of the illegal search of the computer included Mr. Goodale's statements to the police .....................................................18

   B.  THE EVIDENCE THAT MR. GOODALE TRANSPORTED BOYS ACROSS STATE LINES TO COMMIT A SEX ACT IS INSUFFICIENT..................................20

     1.  *Standard of Review* ....................................................*20*

     2.  *Relevant Statutory Provisions* ....................................*21*

     3.  *The evidence is insufficient to prove the all the elements of the offenses charged in counts 1-4.* .........................................*21*

   C.  MR. GOODALE'S SENTENCE OF LIFE IN PRISON WITHOUT PAROLE IS UNREASONABLE AND DERIVED FROM AN INCORRECT APPLICATION OF THE SENTENCING GUIDELINES ...............................................28

     1.  *Standard of Review* ....................................................*28*

     2.  *Relevant Sentencing Guidelines* .................................*29*

     3.  *Imposing a life sentence was the result of an incorrect application of the sentencing guidelines*.................................................*31*

       a)   Mr. Goodale asserts that the repeat and dangerous offender enhancement was misapplied.............................................................31

Appellate Case: 12-3972   Page: 3   Date Filed: 04/02/2013 Entry ID: 4020681

b) Use of a preponderance of the evidence standard to determine the repeat and dangerous offender enhancement violated Mr. Goodale's right to Due Process of law ...................................................................... 33

4. *Imposing a life sentence was contrary to statute and substantively unreasonable*.................................................................................*36*

a) Nature and Circumstances of the Offense and History and Characteristics of the Defendant.......................................................... 39

(1) Personal characteristics.......................................... 39

(2) Nature and circumstances of the offense ................ 40

b) Seriousness of the Offense, Respect for Law, Just Punishment................ 41

c) Deterrence to Criminal Conduct................................................ 42

d) Protection of the Public from Further Crimes of the Defendant .............. 45

e) Rehabilitation in the Most Effective Manner ........................... 49

f) Kinds of Sentences Available.................................................. 50

g) Consideration of Unwarranted Disparities ............................... 50

h) "Considering" the Advisory Guideline Range ......................... 51

5. *Conclusion* ...............................................................................*52*

**X.** **CONCLUSION** ...............................................................**52**

**XI.** **CERTIFICATES** .............................................................**53**

**XII.** **ADDENDUM** ...............................................................**54**

iii

# III.   TABLE OF AUTHORITIES

**CASES**

*Brown v. Illinois*, 422 U.S. 590, 602-03, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975)................................................................22

*Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971) .................................................15

*Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 591, 169 L. Ed. 2d 445 (2007)........................................ 30, 31, 40, 42, 56

*In Re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)........24

*Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)................................................ 22, 24, 29

*Kimbrough v. United States*, 552 US 85, 128 S. Ct. 558, 570, 169 L. Ed. 2d 481 (2007)..................................................... 40, 56

*McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 2418, 91 L.Ed.2d 67 (1986)...............................................37

*Rita v. United States*, 551 US 338, 127 S. Ct. 2456, 2463, 2465, 2467-68, 168 L. Ed. 2d (2007)..............................................56

*Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)................................................15

*Sullivan v. Minnesota*, 818 F.2d 664, 66 (8th Cir. 1987) ...............................27

*Texas v. Brown*, 460 U.S. 730, 749-50, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983) (plurality) (J. Stevens, concurring) ................................18

*United States v. Anderson,* 688 F.3d 339, 343 (8th Cir. 2012) ....................14

*United States v. Autery*, 555 F.3d 864, 879 (9th Cir. 2009) (Tashima, J., dissenting)...............................................41

*United States v. Bah,* 439 F.3d 423, 432-33 (8th Cir. 2006) (Bye, J., concurring)................................................37

*United States v. Beiermann*, 599 F. Supp. 2d 1087, 1103-04 (N.D. Iowa 2009) ...............................................46

*United States v. Block*, 590 F.2d 535 (4th Cir. 1978)...............................17

*United States v. Booker*, 543 US 220, 261, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005)...............................................40

*United States v. Davis*, 332 F.3d 1163, 1170 (9th Cir. 2003) ......................20

*United States v. Feemster*, 572 F.3d 455, 472 (8th Cir. Mo. 2009) (J. Beam, dissenting)................................................41

*United States v. Frausto*, 636 F.3d 992, 995 (8th Cir. 2011)......................30

*United States v. Gabe*, 237 F.3d 954, 960 (8th Cir. 2001) ...........................26

Appellate Case: 12-3972     Page: 5     Date Filed: 04/02/2013 Entry ID: 4020681

*United States v. Goodale*, 2012 U.S. Dist. LEXIS 55554, 21, 2012 WL 1376996 (N.D. Iowa Apr. 19, 2012) ........................................................19

*United States v. Hawthorne*, 982 F.2d 1186, 1189 (8th Cir. 1992)..............14

*United States v. Hayes*, 518 F.3d 989, 995 (8th Cir. 2008)...........................30

*United States v. Jacobsen*, 466 U.S. 109, 115, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984).........................................................................................................19

*United States v. Martin*, 455 F.3d 1227, 1237 (11th Cir. 2006) .................41

*United States v. Martinez*, 696 F. Supp. 2d 1216, 1252 (D.N.M. 2010).......21

*United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974)..........................................................................................................17

*United States v. McMurray*, 34 F.3d 1405, 1409 (8th Cir. 1994) ................14

*United States v. Parris*, 573 F. Supp. 2d 744 (E.D.N.Y. 2008) ..................45

*United States v. Richardson*, 583 F. Supp. 2d 694, 724 (W.D. Pa 2008) .....21

*United States v. Robinson*, 999 F. Supp. 155, 162-63 (D.Mass. 1998).........17

*United States v. Rojas*, 520 F.3d 876, 883 (8th Cir. 2008)...........................55

*United States v. Snype*, 441 F.3d 119, 130 (2d Cir. 2006...........................15

*United States v. Starr*, 533 F.3d 985, 994 (8th Cir. 2008) ..........................19

*United States v. Staten*, 466 F.3d 708, 718 (9th Cir. Mont. 2006)...............37

*United States v. Summage*, 575 F.3d 864, 872 (8th Cir. 2009) ....................31

*United States v. Townley*, 929 F.2d 365, 370 (8th Cir. 1991) ......................37

*United States v. Villareal-Amarillas*, 562 F.3d 892, 897-898 (8th Cir. 2008) ...............................................................................................................39

*United States v. Wright*, 119 F.3d 630, 633-34 (8th Cir. 1997) ...................27

*United States v.Tyerman*, 701 F.3d 552, 559 (8th Cir. Iowa 2012) .............32

*Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)..........................................................................................................20

## STATUTES

18 U.S.C § 3742(a)(1) ......................................................................................1

18 USC § 2241(c) ...........................................................................................23

18 USC § 2423(a) ...........................................................................................23

18 USC § 3231.................................................................................................1

28 USC § 994(c)(4), (5)..................................................................................45

## OTHER AUTHORITIES

Andrew von Hirsch, et al, Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999) ........................................................47

v

David Weisburd et. al., <u>Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes</u>, 33 Criminology 587 (1995) ............47

Gary Kleck, et al, <u>The Missing Link in General Deterrence Theory</u>, 43 Criminology 623 (2005) ................................................................48

Immanuel Kant, <u>The Science of Right</u> 195 (W. Hastie trans., 1790)............49

Lynne M. Vieraitis, Tomaslav V. Kovandzic, Thomas B. Marvel, <u>The Criminogenic Effects of Imprisonment: Evidence from State Panel Data 1974-2002</u>, 6 Criminology & Public Policy 589 (2007).........................54

Michael Tonry, <u>Purposes and Functions of Sentencing</u>, 34 Crime and Justice: A Review of Research 28-29 (2006)............................................47

Pat Lombard and Laural Hooper, <u>RIP FAQ's Bulletin</u> (1998) ............. 49, 50

Paul J. Hofer, <u>Immediate and Long-Term Effects of United States v. Booker</u>, 38 Ariz. St. L.J. 425, 442 (2006)...............................................55

U.S. Department of Justice, <u>Myths and Facts About Sex Offenders</u> (Aug. 2000) ....................................................................................51

USSC, <u>Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines</u>, (May 2004) ............................................51

**RULES**

Rule 4(b), Federal Rules of Appellate Procedure............................................1

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment, United States Constitution ............................................15

**SENTENCING GUIDELINES**

*USSG § 2A3.1* ................................................................................31

*USSG §4B1.5* ................................................................................31

Appellate Case: 12-3972     Page: 7     Date Filed: 04/02/2013 Entry ID: 4020681

# IV.  STATEMENT OF JURISDICTION

The district court had jurisdiction over the case because the Defendant was charged by Indictment with violations of federal law. 18 USC § 3231. The trial court judge who presided at trial and who imposed the judgment and sentence on about December 6, 2012, was the Hon. Linda Reade [Addendum, p. 58].  Notice of appeal was timely filed on December 10, 2012.  [Addendum, p. 65].

The Court of Appeals' jurisdiction lies with 18 USC § 3742(a)(1) and Rule 4(b), Federal Rules of Appellate Procedure.

# V.  STATEMENT OF THE ISSUES

**Evidence obtained in violation of the fourth Amendment was used against Mr. Goodale at trial.**

*Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971)

*United States v. Block*, 590 F.2d 535 (4th Cir. 1978)

*Texas v. Brown*, 460 U.S. 730, 749-50, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983) (plurality) (J. Stevens, concurring)

1

*United States v. Jacobsen*, 466 U.S. 109, 115, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984)

**The evidence that Mr. Goodale transported boys under or over age 12 across state lines to commit a sex act is insufficient.**

*Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)

*Sullivan v. Minnesota*, 818 F.2d 664, 66 (8th Cir. 1987)

14th Amendment, United States Constitution

**Mr. Goodale's sentence of life in prison without parole is unreasonable and derived from an incorrect application of the sentencing guidelines.**

*Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007)

USSG § 4B1.5

2

*United States v. Feemster*, 572 F.3d 455, 472 (8th Cir. Mo. 2009) (J.

Beam, dissenting, arguing for "a more serious level of review" of the

reasonableness of a guidelines sentence)

18 USC § 3553(a)

## VI.  STATEMENT OF THE CASE

This is an appeal from a conviction and sentence.  The Indictment was

filed on March 7, 2012. [Addendum, p. 1].  The Indictment contained five

counts.  Counts 1 and 2 charged Mr. Goodale with aggravated sexual abuse

in violation of 18 USC § 2241(c).  Counts 3 and 4 charged interstate

transportation of a minor with intent to engage in criminal sexual activity in

violation of 18 USC § 2423(s).  Count 5 charged Mr. Goodale with

accessing with intent to view child pornography in violation of 18 USC §

2252A(a)(5)(B) and (b)(2).

Mr. Goodale filed a motion to suppress the warrantless search of a

laptop computer at the Mason City, Iowa police department, along with

statements he made to the police shortly after the search. [Clerk's sealed

record index #4].  On April 19, 2012 , the Hon. John Scoles recommended

that the motion be denied. [Addendum, p. 4].  The Hon. Linda Reade

Appellate Case: 12-3972     Page: 10     Date Filed: 04/02/2013 Entry ID: 4020681

adopted that recommendation by order filed on May 31, 2012. [Addendum p. 27].

Trial on all five counts commenced on July 2, 2012. Mr. Goodale made a motion for judgment of acquittal at the close of the state's case. Defendant rested without calling witnesses. The Court denied the motion and the case was submitted to the jury. On July 5, 2012, the jury returned guilty verdicts on all five counts. [Addendum p. 34]. Regarding count 5, the jury made a finding that 9 images located on the laptop computer that had been searched at the Mason City police department were child pornography, and that one image was not.

On July 17, 2012, Mr. Goodale filed a motion renewing his motion for judgment of acquittal and for a new trial. The Court granted the motion for judgment of acquittal regarding one of the counts (count 2) alleging aggravated sexual abuse. Mr. Goodale's other claims for post-trial relief were denied. [Addendum, p. 40].

Mr. Goodale was sentenced on or about December 6, 2012. The Court ordered that Mr. Goodale be sentenced to imprisonment for the rest of his life as punishment for counts 1, 3 and 4. The Court imposed a sentence

Appellate Case: 12-3972    Page: 11    Date Filed: 04/02/2013 Entry ID: 4020681

of 120 months concurrent with the life sentences as punishment for count 5. [Addendum p. 58]. He filed a notice of appeal on December 10, 2012. [Addendum, p. 65].

## VII.  STATEMENT OF FACTS

M.R.'s mother, Belcher, testified that he was born on August 30, 1998.  Pg:4 Ln:18-25.[1]  M.R.'s mother, B. Belcher, had a relationship with Mr. Goodale's brother for a time. Pg:10 Ln:19-25.  Through this connection, M.R. met Mr. Goodale.  This was when M.R. was in the fourth grade. Pg:6 Ln:6-13.  Mr. Goodale helped M.R. with his homework and otherwise work through his behavior issues.  Pg:11 Ln:8-19.

On September 16, 2011, or in the early morning hours of the following day, Belcher was at her home with her friend James Frantzen, drinking beer. Pg:6 Ln:25 - Pg:7 Ln:8.  Her son M.R., Mr. Goodale, and Z.G. were also present.  Very late that evening, or early in the morning of the 17th, M.R. talked to her son and then they located and took possession of Mr. Goodale's laptop.  Goodale was sleeping and was not asked permission. Belcher looked at the laptop and then took it and M.R. to the Mason City

_____

[1] References are to the trial transcript unless otherwise noted.

5

police department. Pg:8 Ln:22 - Pg:9 Ln:3. When they arrived, they were taken to a room in the police department where, in the presence of an officer, M.R. opened the computer and navigated to a listing of what appeared to be gay teen chat sites. Suppression Hearing (SH), Pg:7 Ln:2 - Pg:10 Ln:19. One of the officers touched the keypad of the computer during this process. SH Pg:10, Ln:5-6. The police observed the screen while M.R. manipulated the computer. SH Pg:10, Ln:11-13. Based on these observations, the police sought and obtained a warrant to further search the computer. SH Pg:11, Ln:19-21.

M.R., at the time of trial in July of 2012, was in the eighth grade. Pg:17, Ln:24-25. He testified that Z.G. was his friend for at least five years. Pg:18, Ln:3-11. M.R. testified that he became friends with Mr. Goodale for several years. Pg:19, Ln:1-16. He liked doing things like going out for ice cream, playing video games, going on trips, staying at Mr. Goodale's house, and doing lawn care work. Pg:21, Ln:5-15 . M.R. said he was paid for helping with the lawn care work, and in addition, for giving Mr. Goodale "hand jobs" and "blow jobs." He said sexual touching began when he was eight years old. Pg:21, Ln:20-24; Pg:22, Ln:9-11.

6

M.R. said that Mr. Goodale would take him on out of town trips to locations in Iowa and Minnesota. Pg:29, Ln:7-17. He said that very rarely, Z.G. would also come along. Pg:30, Ln:3-16 M.R. said he never saw sexual touching when Z.G. was present in Minnesota hotels. Pg:32, Ln:18-20. M.R. said that when he was in the Minnesota hotels, and the Iowa hotels, there was sexual activity. He remembered going to the Mall of America in Minnesota in 2010, and that there was sexual touching then. Pg:33, Ln:8-25.

M.R. testified that he never told his mother anything, and in fact, he told her there was not any sexual activity. Pg:34, Ln:7-24. He also said that Mr. Goodale never threatened him but did ask him not to tell anyone. He said Mr. Goodale never used force and if he said no, Mr. Goodale would abide by that. Pg:35, Ln:22 - Pg:36, Ln:1.

On cross-examination, M.R. reiterated that Mr. Goodale never used force or threats or violence against him. Pg:51, Ln:23-25. When asked to give an estimate of how many times he went to a hotel in Minnesota, M.R. said he did not know and could not give an estimate. Likewise he could not give any firm date on when he was at a hotel in Minnesota with Mr. Goodale. Pg:52 Ln:25 - Pg:53, Ln:14.

Appellate Case: 12-3972    Page: 14    Date Filed: 04/02/2013 Entry ID: 4020681

Lisa Kaster testified that she is the mother of Z.G., who was born on August 26, 1998. Pg:54, Ln:13-21. She testified that she know of only one trip that her son, Z.G., might have taken with Mr. Goodale, and on that occasion, Goodale's parents went with him as well. Pg:59, Ln:22 - Pg:60, Ln:5.

Z.G. testified that he had just finished 7th grade. Pg: 62 Ln: 12-14. Mr. Goodale is his uncle. Z.G. enjoyed being with his uncle, and they did yard work for other people, played video games, going to restaurants, and hanging out. Pg: 64 Ln: 11-25. Z.G. was paid by Mr. Goodale for helping with the yard work, and also for sexual touching, which began at age seven. Pg: 65 Ln: 1-10. The sexual touching was mostly hand jobs. Pg: 68 Ln: 2-14. Payment included cash and video games. Pg: 68 Ln: 17 - Pg: 69 Ln: 8.

On cross examination Z.G. said he started hanging out with Mr. Goodale when he was about ten years old. Pg: 80 Ln: 6-12. He never told anyone about sexual activity with Mr. Goodale. Pg: 81 Ln: 11-14. He claimed that his mother and father never questioned him about the supposed cash gifts and video games provided to him. Pg: 86 Ln: 21-23. Z.G. said he would get mad and argue with Mr. Goodale, but did not tell anyone about his allegations of sexual activity. Pg: 87 Ln: 9-17. He was asked if he could

8

provide any times or dates or places where sex acts occurred, and he said no. Pg: 87 Ln: 9 – Pg. 88 Ln:2.

Craig Tomlinson from the FBI testified that he seized the laptop computer that Belcher brought to the Mason City Police Department . Pg: 89 Ln: 22 - Pg: 90 Ln: 1. He also obtained a warrant to obtain phone and text message records. Pg: 90 Ln: 16-24. The records showed almost 3000 phone and text messages between Mr. Goodale and M.R. from September of 2010 through September of 2011 Pg: 98 Ln: 3-16; and about half that many messages involving Mr. Goodale and Z.G. for the same period. Pg 99 Ln: 7-17.

Tomlinson obtained hotel records from Iowa and Minnesota. Some of the records indicate that there was one adult (Mr. Goodale) and one unnamed person under 18 listed as guests. Pg: 103 Ln: 23 - Pg: 104 Ln: 14. Eight of the receipts were from hotels in Minnesota. Of those, three were for dates after M.R. and Z.G. had their 12th birthday. Pg: 127 Ln:4-16.

Two jailhouse informants testified for the government. They said that while they were under cooperation agreements with the Government, they engaged Mr. Goodale in conversations about his case while sharing the same

9

cell block in the Linn County jail.  Ivan Clark testified that Mr. Goodale told him he was having sex with his nephew, Z.G.  Pg: 148 Ln: 16-25.  Clark said Mr. Goodale never mentioned the name, M.R. Pg. 173 Ln:15-16.   Clark had previously testified against two other defendants in federal cases. Pg. 170 Ln:16 – Pg: 171 Ln:2.

Lynn Johnstone was the other jailhouse informer.  He testified that Mr. Goodale told him there were up to 100 images of child pornography on his computer and that he had sex with his nephew. Pg:179 Ln:7-17.  He said that Mr. Goodale told him he and his nephew went to Minnesota a couple of times, but did not say anything about sex acts having occurred  there. Pg: 181 Ln: 24 – Pg: 182 Ln:17.  He also said that Mr. Goodale never mentioned the name, M.R.  Pg: 188 Ln: 19-22.

Dean Goodale testified for the Government.  Dean is Mr. Goodale's father, and Z.G. is his grandson. Pg: 195 Ln: 17-20.  He testified that it is a family tradition to take trips to hotels.  "Michael has been going to hotels forever," Dean said, "because that is what we did." Pg: 199 Ln:10-13.  He also testified that neither boy nor their parents ever reported any problem associated with the boys spending time with Mr. Goodale. Pg: 200 Ln:4-8.

10

Debbie Fenton is a forensics examiner for the FBI in Omaha. Pg: 247 Ln: 18-19. She examined the computer that Belcher took to the Mason City police department. She retrieved about 10 images from the computer. Some of the images were stored on the computer by the operating system when they were accessed on the internet. The others were recovered from unallocated space on the hard drive after they had been deleted. The images were retrieved because they appeared to be child pornography. Pg: 258 Ln: 11-14. There were also web search terms associated with an interest in child pornography. Pg: 268 Ln: 16-17. The parties stipulated that the hard drive on which the images were found had traveled in interstate commerce. Pg: 312 Ln: 25.

## VIII.   SUMMARY OF THE ARGUMENT

The trial court erred by concluding that Mr. Goodale's laptop computer was not seized and searched at the Mason City police department without a warrant in violation of the Fourth Amendment. The judge concluded that the scope of the seizure and search at the police department did not exceed the scope of a prior private search. However, the facts of this case distinguish it from the private search cases upon which the judge relied because in those cases, the private search was undertaken by persons or

11

entities who had a right to possess and exercise control over the item searched. In Goodale's case, the laptop was taken from him and operated without his knowledge or consent or any other claim of right.

Mr. Goodale also asserts that the evidence is insufficient to uphold a verdict that he is guilty of transporting a boy who was then under age 12 across a state line to engage in a sex act. One count alleging this offense was directed out by the Court because the evidence was insufficient; the other count involving another boy should have been because the evidence supporting that count was no more substantial that the evidence for the count of conviction that the judge set aside. In both cases, the circumstances suggest that the boys were coached to make vague, general allegations in response to leading questions but when pressed, they both were unable to describe any time or place or circumstance under which either engaged in a sex act in Minnesota, so as to provide substantial evidence in support of the 2241(c) offenses charged in this case. In essence, Mr. Goodale asserts that although the testimony of a purported victim, alone, can support a conviction, like any other evidence, the testimony must be substantial as required by the guaranty of Due Process of law. Moreover, Mr. Goodale asserts that the evidence is likewise insufficient to uphold the guilty verdicts

12

for counts 3 and 4, which allege that he transported the boys across state lines to commit a sex act after they were 12 years old.

Mr. Goodale also asserts that that the life sentence was based on an incorrect application of the Guidelines. He further asserts that the sentence is substantively unreasonable, given the paucity of evidence that he committed the crimes; because he has no prior convictions for this type of offense or any crime of violence; there is no claim of the use of force or violence or threats or intimidation; the alleged acts were all consensual and non-violent; and there is no evidence that the boys suffered any physical or emotional injury. It would be a violation of Due Process to uphold the sentence of life without parole imposed upon him in this case.

## IX. ARGUMENT

### A. EVIDENCE OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT WAS USED AGAINST MR. GOODALE AT TRIAL.

#### 1. Standard of Review

The district court's denial of a motion to suppress is reviewed, as to factual findings, for clear error, and as to legal conclusions, de novo. *United States v. Anderson,* 688 F.3d 339, 343 (8th Cir. 2012)*; accord, United States v. McMurray*, 34 F.3d 1405, 1409 (8th Cir. 1994) (on a motion to suppress,

13

application of law to facts is reviewed de novo), cert. denied, 130 L. Ed. 2d 1119, 63 U.S.L.W. 3627, 115 S. Ct. 1164 (U.S. Feb. 21, 1995) (No. 94-7605); *United States v. Hawthorne*, 982 F.2d 1186, 1189 (8th Cir. 1992) (justification for seizure is reviewed de novo).

### 2. *Police seized and searched a computer without a warrant*

Mr. Goodale asserts that the seizure and search of his computer at the Mason City police department on about September 17, 2011, violated the Fourth Amendment, United States Constitution, and that evidence derived from that violation must be suppressed.

It has long been a "basic constitutional rule" that warrantless searches "are per se unreasonable under the Fourth Amendment - subject only to a few specifically established and well delineated exceptions." *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). One such "well delineated" exception occurs where the search "is conducted pursuant to the consent of an authorized person." *United States v. Snype*, 441 F.3d 119, 130 (2d Cir. 2006). The government bears the burden of establishing the validity of a consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973).

14

Belcher, the mother of M.R., who is one of the boys Mr. Goodale is accused of having improper contact with, took Mr. Goodale's laptop without his permission and went with M.R. to the Mason City, Iowa police station. At the police station, the police allowed the boy to open the computer, operate it, and then viewed what appeared on the screen. Suppression Hearing (SH), Pg:7 Ln:2 - Pg:10 Ln:19. One of the police officers touched the touchpad on the computer. SH Pg:10, Ln:5-6. Mr. Goodale's consent was not sought, let alone obtained.

Based on their observations, which were included in an affidavit for warrant, the police obtained a warrant to search the computer. SH Pg:11, Ln:19-21. A few images, about 10, that appeared to be child pornography were subsequently located after a forensic analysis of the computer. Trial Transcript, Pg: 258 Ln: 11-14. Some of the images were created by the operating system after they were viewed on the internet, and some were recovered from unallocated space on the computer after they had been deleted. These images were used to prove a count in the Indictment charging possession of, or accessing child pornography. No doubt this evidence was also considered by the jury in connection with the interstate transportation counts. Mr. Goodale asserts that the police seized the laptop

15

and searched it without a warrant by allowing the boy to operate the computer in their presence.

### a) There was no consent by Mr. Goodale

To be valid, a consent need not be provided by the actual owner of the property searched. A consent search will be upheld if the government can demonstrate that the consent was given by "a third party who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). There is no evidence that the boy or the boy's mother possessed common authority over the laptop with Mr. Goodale. *See United States v. Block*, 590 F.2d 535 (4th Cir. 1978) (mother had no authority to consent to search of footlocker in son's room); *United States v. Robinson*, 999 F. Supp. 155, 162-63 (D.Mass. 1998) (mother had authority to consent to search of adult son's bedroom for items open to view but not a closed vinyl bag in the room or the pockets of a pair of pants in the room).

### b) Even if there was probable cause to seize the computer, there was no lawful basis to conduct a search

[I]f there is probable cause to believe [an object] contains contraband, the owner's possessory interest in the container must yield to society's interest in making sure that the contraband does not vanish during the time it would

16

take to obtain a warrant. The item may be seized temporarily. It does not follow, however, that the container may be opened on the spot. Once the container is in custody, there is no risk that evidence will be destroyed. Some inconvenience to the officer is entailed by requiring him to obtain a warrant before opening the container, but that alone does not excuse the duty to go before a neutral magistrate.

*Texas v. Brown*, 460 U.S. 730, 749-50, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983) (plurality) (J. Stevens, concurring).

In this case, there was not probable cause for the police to believe that the computer contained contraband when the boy and his mother brought it to the police station. Even if there were, on the authority of *Texas v. Brown*, there was no authority to watch while the boy opened the laptop, operated it, and displayed the results on the monitor for the police to see.

### c) The private search exception to the Fourth Amendment does not apply

The district court upheld the search on the ground that, "[t]he Fourth Amendment, however, does not extend to private searches that are neither instigated by nor performed on behalf of a governmental entity," citing *United States v. Starr*, 533 F.3d 985, 994 (8th Cir. 2008).[2] *Starr*, and *United States v. Jacobsen*, 466 U.S. 109, 115, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984) upon which *Starr* relied, are inapposite because they involved police

---

[2] *United States v. Goodale*, 2012 U.S. Dist. LEXIS 55554, 21, 2012 WL 1376996 (N.D. Iowa Apr. 19, 2012); Addendum, p. 32.

17

searches of objects that were *legitimately* in the possession of and previously searched by another person (the defendant's wife, in *Starr*) or entity (private freight carrier, in *Jacobsen*).   By way of contrast, Mr. Goodale's laptop was taken from him without his permission.  It would set an unfortunate precedent for this Court to condone a police search of stolen property; essentially, the police thereby become a party to a crime.

### d)  The fruits of the illegal search of the computer included Mr. Goodale's statements to the police

Mr. Goodale was confronted by the police approximately an hour after Belcher, the mother, and M.R., her son, arrived at the police station with Goodale's laptop.  SH Pg: 12 Ln:2-17.  Goodale, who had been sleeping, agreed to come to the police station and speak with the police. SH Pg: 13 Ln:22-24; Pg: 14 Ln: 3-25.  What he told the police should have been suppressed.

In *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), the Supreme Court held that evidence seized after an illegal search is subject to suppression as the so called "fruit of the poisonous tree" unless the government can demonstrate that obtaining the evidence resulted from "an intervening independent act of free will" sufficient to "purge the primary taint" of the unlawful search. Id. at 486.

18

When a defendant is confronted by law enforcement with incriminating evidence obtained by an illegal search and then makes admissions about that evidence, it is ordinarily obvious that there has been an exploitation of the illegality. *See, e.g., United States v. Davis*, 332 F.3d 1163, 1170 (9th Cir. 2003) (statements made to police suppressed as fruit of the poisonous tree where defendant questioned about weapons several hours after an illegal search during which guns were found in his gym bag). That Mr. Goodale apparently agreed to come to the police station is not a significant intervening circumstance that caused the taint of the illegal search of the home to become attenuated. *See United States v. Martinez*, 696 F. Supp. 2d 1216, 1252 (D.N.M. 2010) (collecting federal cases); *United States v. Richardson*, 583 F. Supp. 2d 694, 724 (W.D. Pa 2008) (where "there would have been no basis to invite the Defendant to the [police station] and commence any conversation regarding child pornography images" without an illegal consent search, the suppressions of statements made when defendant voluntarily appeared to talk to agents was required). While there exists no bright line test for temporal proximity in determining whether the link between the illegality and the confession has been attenuated by the lapse of time, a review of the case law clearly suggests an hour or less is insufficient.

19

Likewise, the fact that *Miranda* warnings were given to Griswold prior to his confession did not attenuate the taint of the Fourth Amendment violation. *Brown v. Illinois*, 422 U.S. 590, 602-03, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975) ("Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a 'cure-all,' and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to 'a form of words.'").

In conclusion, Mr. Goodale asserts that the particular facts present here provide little room for the government to argue that the statements he made at the police station were not substantively and temporally tainted by the illegal search of his computer.

### B. The Evidence that Mr. Goodale transported boys across state lines to commit a sex act is insufficient

#### 1. Standard of Review

Due process requires the government to present evidence sufficient to prove each element of a criminal offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

20

## 2. *Relevant Statutory Provisions*

18 USC § 2241(c): Whoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years ... shall be fined under this title and imprisoned for not less than 30 years or for life.

18 USC § 2423(a):  A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

### 3. *The evidence is insufficient to prove the all the elements of the offenses charged in counts 1-4.*

Counts 1 and 2 charged a violation of § 2241(c), so-called aggravated sexual abuse.  Counts 3 and 4 charged a violation of § 2423(a), interstate transportation of a minor.

To prove that Mr. Goodale was guilty of the  crime of aggravated sexual abuse in violation of 18 USC § 2241(c), the Government was required to prove beyond a reasonable doubt that he transported children under age 12 across state lines for sexual purposes.  The requirement that all

21

elements of the offense be proved beyond a reasonable doubt is bottomed in the Due Process Clause of the Fourth Amendment. *Jackson v. Virginia, supra*, at 315, *citing In Re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

A count charging a violation of 2241(c) involving one of the boys, Z.G., was dismissed by the Judge post-trial. Order filed 9/24/12, p. 12. Following is what Z.G. said about sex acts in Minnesota (page number and lines from the trial transcript precede the questions and answers).

85:12 Q. How many times do you believe you went to Minnesota

85:13 with Mike Goodale?

85:14 A. A lot.

85:15 Q. Can you help us out, please? What does a lot mean?

85:16 A. Ten.

85:17 Q. And do you think -- any idea age 13, age 12; any

85:18 thoughts about anything that may have happened that kind

85:19 of clue your memory about age and being in Minnesota?

85:20 A. No.

The other boy, M.R., testified, without any elaboration or detail, and in response to leading questions, that he did engage in sexual conduct in Minnesota when he was younger than 12.

22

32:2  Q.  Okay.  So when you were at Minnesota hotels, did you

32:3  give him hand jobs?

32:4  A.  Yes.

32:5  Q.  Did he give you hand  jobs?

32:6  A.  Yes.

32:7  Q.  Did you give him blow jobs?

32:8  A.  Yes.

32:9  Q.  Did he give you blow jobs?

32:10  A.  No.

However, when pressed on cross-examination to provide any details about when he was in Minnesota, like Z.G., M.R. was unable to assert when or where these acts supposedly occurred.  This is what Z.G. had to say about sex acts in Minnesota.

52:25  Q.  [M.R.] if I asked you how many times do you

53:1  believe you went into the state of Minnesota to a hotel or

53:2  whatnot with Michael Goodale, how many times would that

53:3  be?

53:4  A.  I don't know.  I don't know an exact number.

53:5  Q.  Any idea, any estimate or --

53:6  A.  No.

53:7  Q.  Can you tell us, please, any dates -- any firm dates

23

53:8  that you recall when you were in Minnesota at a hotel with

53:9  Michael Goodale?

53:10  A.  Nope.

53:11  Q.  And why is that that you don't remember any of those

53:12  dates or --

53:13  A.  Because it was a little while ago and I just didn't

53:14  really care to remember it, so –

Even though  M.R.'s testimony was as vague, uncertain and as void of specifics as Z.G.'s, it was found by the judge sufficient to uphold a conviction for violating 2241(c).

Mr. Goodale concedes that generally, a victim's testimony alone may be sufficient to persuade a reasonable jury of the defendant's guilt beyond a reasonable doubt.  *See United States v. Gabe*, 237 F.3d 954, 960 (8th Cir. 2001).  However, Mr. Goodale asserts that the issue is not a clear cut as it may seem.

In the first place, as is often the case, *Gabe* relied on a shorthand version of the law.  *Gabe* cited and relied upon *United States v. Wright*, 119 F.3d 630, 633-34 (8th Cir. 1997).  *Wright* did state, as dicta, that had witness Doe been the government's sole witness against Wright, it would have been perfectly proper for the jury to credit Doe's testimony and convict Wright.

24

Id. *Wright* in turn, cited *Sullivan v. Minnesota*, 818 F.2d 664, 66 (8th Cir. 1987), a case that expressed a less expansive view of when evidence is sufficient than was set forth in *Wright* in dicta.

That is, *Sullivan*, which involved a charge of sexual abuse of a minor, recognized that credibility determinations are within the province of the trier of fact and are entitled to "special deference." 818 F.2d, 666. The Court however recited that the child's testimony involved a *detailed* description of the incident and a demonstration of the act with an anatomically correct doll. Moreover, there was corroborating evidence from third parties that the boy exhibited masturbatory behavior after the incident with further supports the child's testimony. "Given this evidence, we believe a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. These facts and this holding in *Sullivan* do not support the broad conclusion that any testimony by a child in any case, standing alone, is sufficient to support a guilty verdict.

In Goodale's case, although M.R. did answer a leading question about whether he engaged in a sex act with Goodale in Minnesota before he turned 12, as noted above, he was unable to give *any* details as to time, place or location to support the claim.

25

Moreover, there was no other evidence to support a claim that prior to age 12, Goodale engaged in a sex act with M.R. in Minnesota. Therefore, Goodale asserts, the testimony of M.R. was little if any more probative than that of Z.G., whose testimony was properly found not to be sufficient to uphold Goodale's conviction. Accordingly, Mr. Goodale asserts that this Court should find that although the testimony of a purported victim alone may be sufficient to uphold a conviction, in this case, there is insufficient evidence to support a finding that Mr. Goodale crossed state lines to commit a sex act with either boy before they were 12 years old.

The second objection that Mr. Goodale raises to the sufficiency of the evidence supporting the 2241(c) conviction is that allowing that conviction to stand on the basis of such unconvincing evidence implicates due process. Testimony of a purported victim may be sufficient, but like any other evidence, is must be substantial. This is not a run of the mill case involving a minor penalty upon conviction. The statutory minimum for the 2241(c) offense is 30 years. The Guidelines base offense reflects the 30 year mandatory minimum by setting a very high base offense level of 38. Moreover, this offense level jumps to 43 if the violation of 2241(c) is repeated even once (although as noted in the next brief point, Mr. Goodale

26

asserts that to apply USSG § 4B1.5 in this manner is improper).  In other words, absent the protection of the due process clause, any person could be convicted and sentenced to life in prison based solely on the basis of vague, uncorroborated testimony of a child who is willing to testify that more than once, when he was under 12, the defendant crossed a state line to engage in some sort of sex act with him.   As noted in Jackson v. Virginia, *supra*,

"Any evidence that is relevant -- that has any tendency to make the existence of an element of a crime slightly more probable than it would be without the evidence, cf. Fed.Rule Evid. 401 -- could be deemed a 'mere modicum.' But it could not seriously be argued that such a 'modicum' of evidence could, by itself, rationally support a conviction beyond a reasonable doubt." *Jackson v. Virginia, supra*, 443 U.S. at 320.

Mr. Goodale also asserts that, because the boys' testimony regarding what occurred in Minnesota was insubstantial and seemingly the product of being coached, it is also insufficient to support a verdict for transporting the boys across a state line after they became 12 years old (counts 3 and 4). Therefore, all counts save for Count 5, the possession of child pornography count, should be set aside.

27

### C. MR. GOODALE'S SENTENCE OF LIFE IN PRISON WITHOUT PAROLE IS UNREASONABLE AND DERIVED FROM AN INCORRECT APPLICATION OF THE SENTENCING GUIDELINES

#### 1. *Standard of Review*

"When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply 'a deferential abuse-of-discretion standard.'" *United States v. Hayes*, 518 F.3d 989, 995 (8th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 591, 169 L. Ed. 2d 445 (2007)).

"In reviewing a defendant's sentence, we first ensure that the district court did not commit significant procedural error; then, absent significant procedural error, we review the sentence for substantive reasonableness." *United States v. Frausto*, 636 F.3d 992, 995 (8th Cir. 2011) (internal quotation marks and alterations omitted). "Procedural errors include 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" Id. (quoting *Gall,* 552 U.S., 51). "In reviewing a sentence for procedural error, we review the district court's factual findings

28

for clear error and its application of the [G]uidelines de novo." Id. (internal quotations marks omitted).

In the absence of procedural error below, we "should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 128 S. Ct., 597. In conducting this review, courts are to "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." Id. If the defendant's sentence is within the Guidelines range, then we "may, but [are] not required to, apply a presumption of reasonableness." Id.

Due process claims are reviewed de novo. *United States v. Summage*, 575 F.3d 864, 872 (8th Cir. 2009); *United States v. Tyerman*, 701 F.3d 552, 559 (8th Cir. Iowa 2012).

### 2. *Relevant Sentencing Guidelines*

USSG § 2A3.1      Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse

(a)      Base Offense Level:
…
(b)(1)      38, if the defendant was convicted under 18 U.S.C. 2241(c); or
(2)      30, otherwise.

***

29

USSG §4B1.5    Repeat and Dangerous Sex Offender Against Minors

(a) In any case in which the defendant's instant offense of conviction is a covered sex crime, § 4B1.1 (Career Offender) does not apply, and the defendant committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction:

(1) The offense level shall be the greater of:

(A) the offense level determined under Chapters Two and Three; or

(B) the offense level from the table below decreased by the number of levels corresponding to any applicable adjustment from § 3E1.1 (Acceptance of Responsibility):

```
                    Offense Statutory Maximum
Offense

Level

(i) Life.....................................…
37
(ii) 25 years or more .......................…
34
(iii) 20 years or more, but less than 25 years .…
32
(iv) 15 years or more, but less than 20 years .…
29
(v) 10 years or more, but less than 15 years .…
24
(vi) 5 years or more, but less than 10 years ..…
17
(vii) More than 1 year, but less than 5 years ..…
12.
--------------
```

(2) The criminal history category shall be the greater of: (A) the criminal history category determined under Chapter Four, Part A (Criminal History); or (B) criminal history Category V.

(b)    In any case in which the defendant's instant offense of conviction is a covered sex crime, neither §4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct:

(1)    The offense level shall be 5 plus the offense level determined under Chapters Two and Three. However, if the resulting offense level is less than

level 22, the offense level shall be level 22, decreased by the number of levels corresponding to any applicable adjustment from §3E1.1.

(2)    The criminal history category shall be the criminal history category determined under Chapter Four, Part A.

### 3. *Imposing a life sentence was the result of an incorrect application of the sentencing guidelines*

What elevates Mr. Goodale's Guidelines sentence from a very long term to life without parole is the application of  USSG § 4B1.5, the "repeat and dangerous offender against minors" guideline.  Although Mr. Goodale was not, in the common parlance, a repeat offender, and although the Government presented no evidence that he is dangerous, this Guideline was applied to increase the offense level for count 1 from 38 to 43.  At offense level 43, the Guidelines sentence is life, even for persons with no criminal record at all.

#### a) Mr. Goodale asserts that the repeat and dangerous offender enhancement was misapplied

Mr. Goodale acknowledges that the application notes 4(B) (i) and (ii) for USSG § 4B1.5 indicate that an occasion of prohibited sexual conduct may be considered without regard to whether the occasion occurred during the course of the instant offense.  Thus, the application notes seem to indicate that a repeat offender does not require that there be evidence of sexual conduct occurring independent or outside the scope of the present

31

offense or that there be a prior conviction for subsection (b) to apply. Mr. Goodale asserts, however, that there is an implicit cap for the offense level when USSG § 4B1.5(b) is applied. The cap is required to for this Guideline to make sense. The argument is as follows.

Subsection (a) provides that when a defendant *does* have a prior conviction and therefore is, in the common parlance, a repeat offender, the offense level is shall be the greater of the offense level determined under Chapters Two and Three of the Guidelines, or 37, if the statutory maximum for the underlying offense is life in prison. Intuitively, and based on the research cited and discussed *infra* at page 46, the presence of a prior conviction for a sex offense involving a minor is a significant factor suggesting dangerousness. There is no basis in logic or based on the research to argue that all other things being equal, a person, like Mr. Goodale, who has no prior convictions for sex offenses involving minors or others should be punished more harshly than a person who has no prior convictions for sexually abusing minors.

With that premise in mind, it follows that subsection (b)'s 5-level increase to the offense level should not be applied when it increases the offense level to more than offense level 37, which is the maximum offense

32

level in subsection (a) for the true repeat offender section. In other words, offense level 37, or the offense level determined under Chapters Two and Three, should be the maximum offense level when this Guideline is applied pursuant to subsections (a) or (b). There is no reason to believe the Commission intended to punish a person who has no prior convictions for sexually abusing minors much more severely (by adding 5 levels to the offense level computed under Chapters 2 and 3) that an offender who does have such prior convictions. Moreover, if that is what the Commission intended, it would be unreasonable to apply this Guideline.

Mr. Goodale does not believe that this particular argument has been considered by the Court, and therefore, that he is excused from not specifically raising it below.

### b) Use of a preponderance of the evidence standard to determine the repeat and dangerous offender enhancement violated Mr. Goodale's right to Due Process of law

Mr. Goodale also asserts that there is not sufficiently reliable evidence to support a finding that more than one sex act occurred in Minnesota so as to justify a finding that Mr. Goodale was a repeat offender. Mr. Goodale consistently denied that any sex acts occurred in Minnesota, or in Iowa. *See* PSIR, p. 4, last sentence ("he continues to maintain his innocence …"). He

33

denies that the evidence fails to prove even by a preponderance that contrary to his claims a sex act occurred at any particular times or place in Minnesota, as was discussed in the previous brief point beginning at page 22. The boys' testimony suggests that they were programmed to make accusations but when pressed for details, they were unable to back up the conclusory claims, which is consistent with fabrication.

Moreover, Mr. Goodale asserts that because application of the 5-level enhancement for being a "repeat and dangerous" offender has such a significant impact on the sentence, for a judge to make the findings of this consequence using a diluted preponderance of the evidence standard denied Mr. Goodale due process of law as guaranteed by the Fourteenth Amendment. *See McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 2418, 91 L.Ed.2d 67 (1986) (holding that the preponderance standard is *generally* constitutional); *United States v. Townley*, 929 F.2d 365, 370 (8th Cir. 1991) ("We do not foreclose the possibility that in an exceptional case, such as this one, the clear and convincing standard adopted by our sister circuit might apply"); *but see, United States v. Bah,* 439 F.3d 423, 432-33 (8th Cir. 2006) (Bye, J., concurring) *(*post-*Booker*, a due process challenge to findings of fact that impact the defendant's advisory guidelines sentencing

34

range "is cognizable more properly as a challenge to the reasonableness of his sentence."); *compare*, *United States v. Staten*, 466 F.3d 708, 718 (9th Cir. Mont. 2006) (We agree with the suggestion in our post-*Booker* cases and with the government's position in this case that the clear and convincing standard still pertains post-Booker for an enhancement applied by the district court that has an extremely disproportionate effect on the sentence imposed).

*Staten* was recently followed in *United States v. Yi*, 704 F.3d 800, 806 (9th Cir. 2013) ( "We look to whether the district court's application of a nine-level increase for an offense resulting in a substantial likelihood of death or serious bodily injury was supported by clear and convincing evidence, citing *Staten*). As noted in *Yi*, clear and convincing evidence creates a conviction that the factual contention is "highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S. Ct. 2433, 81 L. Ed. 2d 247 (1984).

Mr. Goodale asks the Court to observe that the application of USSG 4A1.5(b) in effect establishes a minimum Guidelines sentence of life in prison for a person convicted of a violation of 18 USC § 2241(c). Also, as the Court is aware, there is almost a complete absence of *any* cases from this or any other Circuit finding that any within-Guidelines sentence is

35

unreasonable.  In addition,  although judges now have more discretion than prior to *Booker*, they have no more discretion now than when *McMillian*, a pre-Guidelines case, was decided.  Thus, the premise underlying  *United States v. Villareal-Amarillas*, 562 F.3d 892, 897-898 (8th Cir. 2008)  is puzzling.  That case concluded that because *Booker* found the Guidelines were advisory only, then due process issues regarding the standard of proof evaporated. Id. at 898 ("Concerns about the 'tail wagging the dog' … were put to rest when *Booker* rendered the Guidelines advisory).

Although Mr. Goodale does assert, in the following brief point, that imposing the Guidelines sentence of life is unreasonable, on the authority of the guaranty of Due Process, he continues to assert that that at least in cases where USSG § 4A1.5(b) is applied to a person convicted of 18 USC § 2241(c) , use of the preponderance of evidence standard is unconstitutional.

### 4.  Imposing a life sentence was contrary to statute and substantively unreasonable

Counsel understands that to make a claim of substantive unreasonableness is generally akin to Don Quixote's tilting at windmills, particularly when the sentence is a within-guidelines sentence.  However, as Sancho advised Quixote, "Great hearts, my dear master, should be patient in

36

misfortune as well as joyful in prosperity." Certainly this case presents nothing about which to be joyful, but the facts do call for patience in assessing punishment for the misfortune visited upon the boys who have claimed that Mr. Goodale took advantage of their youthful innocence.

The district court's choice of sentence is not unfettered. Pursuant to 18 USC 3553(a), the Court must fashion a sentence that complies with the "overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to achieve the goals of sentencing," *Kimbrough v. United States*, 552 US 85, 128 S. Ct. 558, 570, 169 L. Ed. 2d 481 (2007). 128 S. Ct. at 570. *Gall* makes clear that the district court is obliged to "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." 128 S. Ct. at 596-97. The Section 3553(a) "factors in turn ... guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." *United States v. Booker*, 543 US 220, 261, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). The appellate court "will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 128 S. Ct. at 597.

37

An appellate court may overturn a substantively unreasonable sentence, albeit only after examining it through the prism of abuse of discretion, and that appellate review has not been extinguished. Thus, a sentence still may be substantively unreasonable if it does "not achieve the purposes of sentencing stated in § 3553(a)." *United States v. Martin*, 455 F.3d 1227, 1237 (11th Cir. 2006).

Mr. Goodale asserts that upon review of the relevant factors, this Court will conclude that, as did Judge Tashima, albeit in the context of a belief that a sentence was too lenient, that , "[a]t bottom, I am left with a 'definite and firm conviction' that this sentence is outside the realm of reasonableness dictated by the facts of the case." *United States v. Autery*, 555 F.3d 864, 879 (9th Cir. 2009) (Tashima, J., dissenting) (arguing sentence of probation for run of the mill child pornographer was too lenient); *see also United States v. Feemster*, 572 F.3d 455, 472 (8th Cir. Mo. 2009) (J. Beam, dissenting) (arguing for "a more serious level of review" of the reasonableness of a below-guidelines sentence).

38

### a) Nature and Circumstances of the Offense and History and Characteristics of the Defendant

#### (1) Personal characteristics

Section 3553(a)(1) is a "broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Gall*, 128 S. Ct. at 596 n.6.

Mr. Goodale's background is unremarkable and devoid of aggravating circumstances. As noted in the Presentence Investigation report, he is 32 years old (DOB June 1, 1981). He is well educated, having an associates' degree from the North Iowa Community College. [PSIR, ¶ 54]. He was steadily gainfully employed prior to his arrest. [¶ 57]. Interestingly, his last job was as a janitor at a school, and there were absolutely no reports of any improper interaction with students. Mr. Goodale has no substance abuse problems. [¶ 52]. His physical condition includes partial hearing loss, otherwise he is healthy. [¶ 49]. His mental health includes treatment for Tourette's Syndrome and mild depression. [¶ 50].

Mr. Goodale has a close relationship with his parents. [¶ 46]. He is a life-long resident of Mason City, Iowa. He lived with his parents for a few years prior to his arrest for the federal offense. [¶ 48].

Appellate Case: 12-3972    Page: 46    Date Filed: 04/02/2013 Entry ID: 4020681

Mr. Goodale has no prior history of offenses involving sexual abuse, drugs, or crimes of violence. His prior offense involved attempting to elude a law enforcement officer who was attempting a traffic stop. He was transporting older adults from a care facility of some sort. He lost control of the vehicle and was charged and convicted of dependent adult abuse. [¶ 38]. Mr. Goodale received a suspended sentence and after more than two years was discharged from probation. This one offense resulted in a total of 3 criminal history points for sentencing guidelines calculations, and so his criminal history category was II.

Given the absence of any prior record for sex offenses, as argued above, it is unreasonable to apply a five level increase to the offense level determined under Chapters 2 and 3 of the Guidelines.

Furthermore, in general, Mr. Goodale's personal history and characteristics are incompatible with the imposition of a sentence of life without parole.

(2) Nature and circumstances of the offense

Both boys testified that they were not raped – the sex acts consisted of oral sex and masturbation. They made no claim that Mr. Goodale ever

40

forced them to do anything against their will.  If he was asked to stop, he did, according to the boys.  There was no evidence that he threatened the boys.  There is no evidence at trial, in the presentence investigation report, or at the sentencing hearing, that either boy received any counseling or otherwise has required mental health care.  There was no evidence that their parents observed any adverse behavior.  These are all significant factors regarding the nature of the offense that are contrary to imposition of the maximum sentence of life in prison without parole.  Mr. Goodale, in effect, has been unreasonably punished as if he committed the most egregious offense conduct, tantamount to murder, mutilation, torture or other terrible crimes that would justify such severe punishment.

### b)  Seriousness of the Offense, Respect for Law, Just Punishment

Section 3553(a)(2)(A) requires the judge to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  A sentence that is excessive in light of the seriousness of the offense promotes disrespect for law and provides unjust punishment.

The offense may be more or less serious depending on "the community view of the gravity of the offense" or the "public concern

41

generated by the offense." 28 USC § 994(c)(4), (5).  For example, in *United States v. Parris*, 573 F. Supp. 2d 744 (E.D.N.Y. 2008), the judge recognized that the guideline range of 360 months to life, the result of guideline increases stemming from highly publicized major frauds such as Enron, defied common sense in the comparatively run of the mill securities fraud case before him, and imposed a sentence of 60 months.  Likewise, imposing a sentence of life without parole for Mr. Goodale's comparatively run of the mill sexual exploitation case is evocative of the stark view regarding good and evil that motivated Mr. Danforth as he was portrayed in <u>The Crucible</u>. Chapter 3553(a), Mr. Goodale asserts,  requires a more nuanced analysis.

### c)  Deterrence to Criminal Conduct

Section 3553(a)(2)(B) requires the judge to consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct."

In this case, there was no evidence presented or other reason to believe that imposing a life sentence upon Mr. Goodale will act as a deterrent to others.  So,  in another case from the Northern District of Iowa, after reviewing empirical evidence regarding the continuing increase in the number of drug and child pornography offenders despite the war on each and stiff federal sentences, one judge concluded that "there is not a sliver of

42

evidence in this sentencing record remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet. . . . This does not mean that [the defendant] should not receive a lengthy sentence for his criminal conduct, but it does mean that the sentence should not be longer simply to satisfy an objective that, while laudable, is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of." *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1103-04 (N.D. Iowa 2009).

Indeed, the evidence is that increases in sentence length do not reduce crime through deterrence. "Three National Academy of Science panels … reached that conclusion, as has every major survey of the evidence." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime and Justice: A Review of Research 28-29 (2006). In fact, one study of specific deterrence, which involved federal white collar offenders (presumably the most rational of potential offenders) in the pre-guideline era, no difference in deterrence was found even between probation and imprisonment. David Weisburd et. al., Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes, 33 Criminology 587 (1995). *See also* Andrew von

43

Hirsch, et al, <u>Criminal Deterrence and Sentence Severity: An Analysis of</u> <u>Recent Research</u> (1999) (While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance.").

Research shows that people generally are not aware of the penalties for prospective crimes, so it is not surprising that a long sentence received by someone else will not affect them. *See* Gary Kleck, et al, <u>The Missing</u> <u>Link in General Deterrence Theory</u>, 43 Criminology 623 (2005) ("There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms.").

Finally, apart from efficacy, there are moral concerns about justifying harsh punishment to deter others. "Juridicial punishment can never be administered merely as a means for promoting another good either with regard to the criminal himself or to civil society, but must in all cases be imposed only because the individual on whom it is inflicted has committed a crime. For one man ought never be dealt with merely as a means subservient

Appellate Case: 12-3972     Page: 51     Date Filed: 04/02/2013 Entry ID: 4020681

to the purpose of another." Immanuel Kant, <u>The Science of Right</u> 195 (W. Hastie trans., 1790).

### d) Protection of the Public from Further Crimes of the Defendant

Section 3553(a)(2)(C) requires the judge to consider "the need for the sentence imposed . . . to protect the public from further crimes of the defendant."

No formal risk assessment was undertaken in this case. However, the Court can take notice that The Federal Judicial Center developed the Risk Prediction Index (RPI) after several years of study and testing in eleven districts. Pat Lombard and Laural Hooper, <u>RIP FAQ's Bulletin</u> (1998). Courts have cited such data in imposing below guideline sentences. *See, e.g., Gall v. United States*, 128 S.Ct. 586, 601 (approving district court's use of studies to bolster conclusion that defendant's youth at time of crime supported below-guideline sentence). Mr. Goodale's background is entirely consistent with someone who poses little if any threat to the community.

As noted in the RPI references above, at p. 2, citing Sentencing Commission and Parole Commission data, increased age bears a strong correlation to lower recidivism, across the board for all offenses. The

45

2241(c) offense carries a 30 year mandatory minimum sentence. A sentence of this duration would be sufficient to make Mr. Goodale at or near 60 years old upon release.

Education and vocational skills are also significant factors in assessing risk. Overall, recidivism rates decrease with educational level. RPI, p. 3. Mr. Goodale has an associate's degree, as noted, from a junior college, which is a favorable factor.

Stable employment in the years prior to arrest is associated with a lower risk of recidivism, according to the Sentencing Commission. RPI, p. 3. Mr. Goodale, as noted, had stable employment for several years prior to his arrest.

That a defendant is a first or near-first offenders is a powerful predictor of reduced likelihood of recidivism, according to the Sentencing Commission. RPI, p. 3. Mr. Goodale was a near first offender, as noted above.

Interestingly, offense level in *not* a predictor of recidivism, based on Sentencing Commission data. RPI, pp. 3, 4. According to the Commission, "[t]here is no correlation between recidivism and guideline's offense level.

46

Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism." USSC, <u>Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,</u> (May 2004), at 15.

Finally, sex offenders have no higher rates of recidivism than others. Center for Sex Offender Management, Office of Justice Programs, U.S. Department of Justice, <u>Myths and Facts About Sex Offenders</u> (Aug. 2000). An actuarial tool that may help assess a defendant's risk of committing another sex offense is the Static-99 coding form, which is reproduced on the following page.

| Question Number | Risk Factor | | Codes | | Score |
|---|---|---|---|---|---|
| 1 | Young | (S9909) | Aged 25 or older | | 0 |
| | | | Aged 18 – 24.99 | | 1 |
| 2 | Ever Lived With | | Ever lived with lover for at least two years? | | |
| | | | Yes | | 0 |
| | | (S9910) | No | | 1 |
| 3 | Index non-sexual violence – Any Convictions | (S9904) | No | | 0 |
| | | | Yes | | 1 |
| 4 | Prior non-sexual violence – Any Convictions | (S9905) | No | | 0 |
| | | | Yes | | 1 |
| 5 | Prior Sex Offences | | Charges | Convictions | |
| | | | None | None | 0 |
| | | | 1-2 | 1 | 1 |
| | | | 3-5 | 2-3 | 2 |
| | | (S9901) | 6+ | 4+ | 3 |
| 6 | Prior sentencing dates (excluding index) | (S9902) | 3 or less | | 0 |
| | | | 4 or more | | 1 |
| 7 | Any convictions for non-contact sex offences | (S9903) | No | | 0 |
| | | | Yes | | 1 |
| 8 | Any Unrelated Victims | (S9906) | No | | 0 |
| | | | Yes | | 1 |
| 9 | Any Stranger Victims | (S9907) | No | | 0 |
| | | | Yes | | 1 |
| 10 | Any Male Victims | (S9908) | No | | 0 |
| | | | Yes | | 1 |
| | **Total Score** | | **Add up scores from individual risk factors** | | |

**TRANSLATING STATIC 99 SCORES INTO RISK CATEGORIES**

| Score | Label for Risk Category |
|---|---|
| 0,1 | Low |
| 2,3 | Moderate-Low |
| 4,5 | Moderate-High |
| 6 plus | High |

Mr. Goodale would score at most three points on this form (1 point each for

48

not living with lover, unrelated victim, male victim), assuming for the sake of argument that he committed the offenses. Therefore, he would be at worst a low to moderate risk, whereas his life sentence treats him as if he were a high risk danger to the community.

Mr. Goodale concludes, therefore, by asserting that his life without parole sentence is not necessary to protect the public, contrary to this 3553(a) factor.

### e) Rehabilitation in the Most Effective Manner

Section 3553(a)(2)(D) requires the judge to consider, "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

In general, there is substantial evidence that prison, by disrupting employment, reducing prospects of future employment, weakening family ties, and exposing less serious offenders to more serious offenders, leads to increased recidivism. See Lynne M. Vieraitis, Tomaslav V. Kovandzic, Thomas B. Marvel, The Criminogenic Effects of Imprisonment: Evidence from State Panel Data 1974-2002, 6 Criminology & Public Policy 589

Appellate Case: 12-3972     Page: 56     Date Filed: 04/02/2013 Entry ID: 4020681

(2007). In particular, given that Mr. Goodale's sentence is life without parole, his sentence frustrates rather than advances the goal of rehabilitation and turns Mr. Goodale into simply an object to be warehoused for the rest of his life.

### f) Kinds of Sentences Available

Judges must now consider all of "the kinds of sentences available" by statute, § 3553(a)(3), even if the "kinds of sentence . . . established [by] the guidelines" permit or encourage only prison. *See Gall*, 128 S. Ct., 602 & n.11. Mr. Goodale was not subject to a mandatory sentence of life without parole – the decision to impose that sentence was discretionary (but contrary to the purposes of sentencing, as discussed above).

### g) Consideration of Unwarranted Disparities

Section 3553(a)(6) requires the judge to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

One commentator has stated that, "[d]isparity gets its content from the purposes of sentencing. Unwarranted disparity is different treatment that is unrelated to our legitimate sentencing goals, or uniform treatment that fails to take into account differences among offenders that are relevant to our

50

purposes and priorities." Paul J. Hofer, <u>Immediate and Long-Term Effects of United States v. Booker</u>, 38 Ariz. St. L.J. 425, 442 (2006).

Mr. Goodale asserts that sentencing his to the maximum sentence of life without parole, when that sentence clearly does not advance the purposes of sentencing, creates unwarranted disparity contrary to this guideline provision.

### h)  "Considering" the Advisory Guideline Range

Section 3553(a)(4) address the guidelines' recommended sentence.  In this case, the base offense level for the violation of § 2241(c) is 38 (USSG 2A3.1).  Because more than one trip to Minnesota with the intent to engage is a sex act was alleged, USSG § 4B1.5 (repeat offender), as interpreted by this Court , adds 5 additional levels.  *See United States v. Rojas*, 520 F.3d 876, 883 (8th Cir. 2008) (enhancement may apply where there is no prior sex offense conviction and the only pattern of conduct is the conduct involved in the offense of conviction).  Applying only this adjustment to the base offense level makes the total offense level 43, and the corresponding guidelines sentence is life.  In other words, two trips across a state line with a boy under age 12 in violation of  § 2241(c) results in a Guidelines sentence

51

of life imprisonment, even for a first time offender or a near first offender like Mr. Goodale.

Mr. Goodale asserts that (1) that the individual circumstances of the offense or characteristics of the defendant warrant a different sentence than the guidelines recommend; (2) that the guideline sentence itself reflects an unsound judgment in light of the purposes of sentencing and is not based on national sentencing data or empirical research, and (3) that the case warrants a different sentence regardless. *Rita v. United States*, 551 US 338, 127 S. Ct. 2456, 2463, 2465, 2467-68, 168 L. Ed. 2d (2007); *Gall*, 128 S. Ct., 598-602; *Kimbrough*, 128 S. Ct., 575.

### 5. *Conclusion*

For the reasons and upon the authority cited above, Mr. Goodale requests that the Court conclude that the sentence of life without parole was an abuse of discretion because it is contrary to the purposes and goals that guide the sentencing determination.

# X. CONCLUSION

For the reasons and upon the authority cited above, Mr. Goodale requests that the Court find that his life sentence is unreasonable and derived

Appellate Case: 12-3972    Page: 59    Date Filed: 04/02/2013 Entry ID: 4020681

from an incorrect application of the Guidelines; that the evidence is insufficient to convict him of a violation of 18 USC § 2241(c) or 2423(a); and that the evidence from his computer and his statements should have been suppressed.  For relief, Mr. Goodale requests that the court remand for a new trial; or set aside his conviction for violating § 2241(c) and 2323(a); and/or find that his sentence of life in prison is unreasonable.

Respectfully submitted,

MARK C. MEYER, Attorney for Appellant

## XI.   CERTIFICATES

### CERTIFICATE OF FILING

I hereby certify that on 4/1/2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

53

MARK C. MEYER

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of
Fed. R. App. P. 32(a)(7)(B). The brief uses a proportionally spaced, 14-
point Times New Roman font. Based on a word/line count from Microsoft
Word 2010, this brief contains 12,239 words *including* the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

MARK C. MEYER

# XII.  ADDENDUM

(to be filed separately due to length)

Indictment...........................................................................1

Report and Recommendation (motion to suppress)...........4

Appellate Case: 12-3972    Page: 61    Date Filed: 04/02/2013 Entry ID: 4020681

Order adopting Report and Recommendation....................25

Signed verdict forms ...........................................34

Order regarding post-trial motions....................................40

Judgment and Sentencing Order .........................................58

Notice of appeal.................................................................65

Appellate Case: 12-3972    Page: 62    Date Filed: 04/02/2013 Entry ID: 4020681