**No. 12-3972**

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
*FOR THE EIGHTH CIRCUIT*

——————◆——————

*UNITED STATES OF AMERICA*
***Appellee***

vs.

MICHAEL GOODALE
*Appellant*

——————◆——————

APPEAL FROM THE NORTHERN DISTRICT OF IOWA
No. 3:12-cr-03011-LRR-1
*Hon. Linda Reade, Judge*

——————◆——————

**APPELLANT'S BRIEF**
**ADDENDUM**

——————◆——————

MARK C. MEYER
425 2nd Street SE, Suite 1250
Cedar Rapids, Iowa  52401
319-365-7529
legalmail@markcmeyer.com

ATTORNEY FOR APPELLANT

---

# TABLE OF CONTENTS

Indictment ..................................................................................................... 1

Report and Recommendation (Motion to Suppress denied) ............................ 4

Order adopting Report and Recommendation .................................................. 25

Signed verdict forms ........................................................................................ 34

Order regarding post-trial motions ................................................................... 40

Judgment and Sentencing Order ....................................................................... 58

Notice of appeal ............................................................................................... 65

## CERTIFICATE OF SERVICE

I hereby certify that on 4/1/2013, I electronically filed the foregoing addendum with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*Mark Meyer*

MARK C. MEYER

Appellate Case: 12-3972     Page: 2     Date Filed: 04/02/2013 Entry ID: 4020700

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 12-3011-LRR |
| ) | |
| Plaintiff, ) | **Counts 1-2:** 18 U.S.C. § 2241(c): |
| ) | Aggravated Sexual Abuse |
| vs. ) | |
| ) | **Counts 3-4:** 18 U.S.C. § 2423(a): |
| MICHAEL GOODALE, ) | Interstate Transportation of a Minor with |
| ) | Intent to Engage in Criminal Sexual |
| Defendant. ) | Activity |
| ) | |
| ) | **Count 5:** 18 U.S.C. §§ 2252A(a)(5)(B) |
| ) | and 2252A(b)(2): Accessing Child |
| ) | Pornography |

## INDICTMENT

The Grand Jury charges:

### COUNT 1

Between about 2008 and August 29, 2010, in the Northern District of Iowa and

elsewhere, the defendant, MICHAEL GOODALE, knowingly crossed a state line with

intent to engage in a sexual act with John Doe #1, a person under the age of 12 years.

This was in violation of Title 18, United States Code, Section 2241(c).

### COUNT 2

Between about 2008 and August 25, 2010, in the Northern District of Iowa and

elsewhere, the defendant, MICHAEL GOODALE, knowingly crossed a state line with

intent to engage in a sexual act with John Doe #2, a person under the age of 12 years.

This was in violation of Title 18, United States Code, Section 2241(c).

PRESENTED IN OPEN COURT
BY THE
FOREMAN OF THE GRAND JURY
And filed_3/7/2012
ROBERT L. PHELPS, CLERK

1

## COUNT 3

Between about 2008 and September 2011, in the Northern District of Iowa and elsewhere, the defendant, MICHAEL GOODALE, knowingly transported John Doe #1, a person who had not attained the age of 18 years, across a state line, with the intent that such person engage in sexual activity for which any person can be charged with a criminal offense under the laws of the State of Minnesota, that is, Criminal Sexual Conduct under Minnesota Criminal Code Sections 609.342, 609.343, 609.344, 609.345, and 609.3451.

This was in violation of Title 18, United States Code, Section 2423(a).

## COUNT 4

Between about 2008 and September 2011, in the Northern District of Iowa and elsewhere, the defendant, MICHAEL GOODALE, knowingly transported John Doe #2, a person who had not attained the age of 18 years, across a state line, with the intent that such person engage in sexual activity for which any person can be charged with a criminal offense under the laws of the State of Minnesota, that is, Criminal Sexual Conduct under Minnesota Criminal Code Sections 609.342, 609.343, 609.344, 609.345, and 609.3451.

This was in violation of Title 18, United States Code, Section 2423(a).

## COUNT 5

Between about February 2011 and September 2011, in the Northern District of Iowa, the defendant, MICHAEL GOODALE, knowingly accessed with intent to view visual depictions of minors engaged in sexually explicit conduct, said visual depictions having been produced using materials that had been shipped and transported in and affecting interstate and foreign commerce, namely, a Toshiba hard drive (from an HP

2

Compaq Presario laptop computer) that had been manufactured outside the state of Iowa, and said visual depictions having been transported using a means and facility of interstate and foreign commerce.

This was in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2252A(b)(2).

A TRUE BILL,

s/
_____
Foreperson
Dated:  March _6_ , 2012

STEPHANIE M. ROSE
United States Attorney

By: _____
MARK TREMMEL
Assistant United States Attorney

3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | Case No. CR12-3011 |
| vs. | | REPORT AND RECOMMENDATION |
| MICHAEL GOODALE, | | |
| Defendant. | | |

TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.    DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      A.   Waiver of Miranda Rights . . . . . . . . . . . . . . . . . . . . . . . . . 7
           1.   Was Defendant in Custody when Interviewed by Law
                Enforcement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
           2.   Was Defendant's Waiver of Miranda Rights Knowing and
                Voluntary? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      B.   Seizure of the Laptop Computer and the State Search Warrant . . . . 12
           1.   Did Law Enforcement Improperly Seize Defendant's Laptop
                Computer? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
           2.   Was the Search Warrant Supported by Probable Cause? . . . . 15
           3.   Would the Leon Good Faith Exception Apply? . . . . . . . . . 17
      C.   The Federal Search Warrant . . . . . . . . . . . . . . . . . . . . . . . 19

VI.   SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VII.  RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I. INTRODUCTION

On the 3rd day of April 2012, this matter came on for hearing on the Motion to Suppress: Statement and Lap Top Computer (docket number 16) filed by the Defendant on March 25, 2012, as amended (docket number 20) on April 1, 2012. The Government was represented by Assistant United States Attorney Mark A. Tremmel. The Defendant appeared in court and was represented by his attorney, Mark R. Brown.

## II. PROCEDURAL HISTORY

On March 7, 2012, Defendant Michael Goodale was charged by Indictment with two counts of aggravated sexual abuse (Counts 1 and 2), two counts of interstate transportation of a minor with intent to engage in criminal sexual activity (Counts 3 and 4), and accessing child pornography (Count 5). Defendant entered a plea of not guilty, and trial was scheduled for May 7, 2012. On April 9, 2012, Defendant filed a Motion to Reset Trial Date. On that same date, the Court granted Defendant's motion and trial was rescheduled for June 11, 2012.

On March 25, 2012, Defendant timely filed a motion to suppress. Defendant moved to amend his motion suppress on April 1, 2012. At the commencement of the instant hearing, the Court granted that motion. On April 2, 2012, the Government timely filed its Resistance to the motion.

## III. ISSUES PRESENTED

Defendant asks the Court to suppress statements made by him to law enforcement officers on September 17, 2011. Defendant asserts that he did not knowingly and voluntarily waive his *Miranda* rights, and that his subsequent statements to officers were not made voluntarily. Defendant also asks the Court to suppress all evidence related to his laptop computer, asserting it was improperly seized. Defendant claims that both state and federal applications and affidavits for warrants to search the laptop computer lacked probable cause for issuance of a search warrant. The Government denies Defendant's claims and affirmatively asserts that the *Leon* good faith exception is applicable.

2

## IV. RELEVANT FACTS

In the early morning hours of September 17, 2011, Barbara Belcher, age 44, and her 13-year-old son, M.R., went to the Mason City Police Department to report allegations of sexual abuse against Defendant. Belcher and M.R. brought Defendant's laptop computer with them to the police station. When they went to the police station, Defendant was sleeping at Belcher's residence. Z.G.--M.R.'s 13-year-old friend and Defendant's nephew--was also sleeping at Belcher's residence.

Investigator Terrance Prochaska and Investigator Duane Kemna, both of the Mason City Police Department, conducted a videotaped interview with Belcher and M.R. The interview began at approximately 2:24 a.m. Belcher told the investigators that M.R. told her about "some stuff" he had found on Defendant's computer, and then told her that Defendant sexually abused him. Belcher stated that Defendant's computer was "laying around" in her residence that evening, so she checked it, and found a "history of gay porn sites."

At 2:30 a.m., while the interview was ongoing, M.R. opened the laptop and began using it. At 2:34 a.m., while questioning M.R., Prochaska slightly moved the laptop and touched the touchpad. At 2:35 a.m., M.R. used the computer to show the investigators how he found the history with "gay teen porn" in an internet search engine. At 2:40 a.m., the computer screen turned black. At 2:48 a.m., Prochaska moved the laptop and touched the touchpad to bring the computer back to life. Prochaska handled the computer and looked at the computer screen for approximately 17 seconds. At the suppression hearing, Prochaska testified that he did not remember what he saw on the computer screen, and stated that whatever was on the screen was not anything "new" from what had already been shown to him at 2:35 a.m. by M.R. The investigators continued their interview with

M.R., and he described how Defendant had sexually abused him, and sexually abused his friend, Z.G.[1]

Around 3:30 a.m., law enforcement went to Belcher's house seeking Defendant's consent to speak with officers at the police station. Defendant consented to go the police station. Defendant asked law enforcement why the police wanted to speak with him. Sergeant Mike Lillquist told Defendant that police wanted to talk to him about an alleged assault. After Defendant informed Lillquist that he had one drink earlier that night, at around 12:00 a.m., the police decided that it would be best if Defendant rode with Lillquist to the police station. Defendant sat in the front seat of Lillquist's patrol car on the ride to the police station.

At approximately 4:00 a.m., Investigators Prochaska and Kemna conducted a videotaped interview with Defendant. At the outset of the interview, Prochaska read Defendant his *Miranda* rights and gave him a written waiver form. After briefly reviewing the waiver form, Defendant asked Prochaska what the waiver meant. Prochaska replied that the waiver form provides that "you read the statements, you are willing to make a statement and answer questions, basically what its saying is that after you sign this its your understanding that if you talk to us that you have the right to not talk to us and saying that you can stop at anytime and call a lawyer if you need to."[2] Following Prochaska's explanation, Defendant signed the waiver form.

Next, Prochaska told Defendant that he was not under arrest, the door was unlocked, and he was free to leave at anytime. Prochaska began his questioning by asking Defendant whether he knew M.R. and Z.G. Defendant indicated that he knew both of them. Next, Prochaska inquired about Defendant's relationship with M.R. Defendant stated that he was M.R.'s mentor, and that he was like a "big brother" to M.R. Prochaska

---

[1] Belcher left the interview room at approximately 2:39 a.m.

[2] Government's Exhibit 1; Defendant's videotaped interview at 03:59.

4

Case 3:12-cr-03011-LRR    Document 28    Filed 04/19/12    Page 4 of 21
Appellate Case: 12-3972    Page: 9    Date Filed: 04/02/2013 Entry ID: 4020700

asked Defendant whether he ever took M.R. on trips. Defendant replied that he had taken M.R. on trips to Adventureland, Mall of America, and the home of a relative in Minnesota. Prochaska asked Defendant whether M.R. had stayed in hotels with him. Defendant replied that he and M.R. had stayed at hotels together.

Around 4:04 a.m., Prochaska and Kemna left the interview room. They returned at approximately 4:07 a.m. Prochaska continued the interview and inquired about Defendant's sexual preference, and whether Defendant was bisexual. Defendant admitted that he was bisexual, and asked why he was being questioned about his sexual orientation. Prochaska told him that law enforcement had reason to believe that Defendant was engaging in sexual misconduct with M.R. and Z.G. Defendant told Prochaska that he thought he "better stop talking" and that it was best not to say anything to Prochaska and Kemna. Prochaska asked if Defendant wanted to make a statement, and at approximately 4:09 a.m., Defendant invoked his right to remain silent and told the investigators that he had "no statement to give at this time."[3] The investigators stopped questioning Defendant, but asked for his consent to look at his laptop computer. Defendant did not give his consent. Prochaska informed Defendant that due to exigent circumstances, the police intended to hold his computer pending a search warrant.

On September 19, 2011, Jeremy Ryal, an investigator with the Mason City Police Department, submitted an application for search warrant to a state judicial magistrate. The application sought authority to search Defendant's laptop computer. The application was supported by an affidavit signed by Ryal.[4] In the affidavit, Ryal outlined the events of September 17, 2011, when Belcher and M.R. went to the police station with Defendant's laptop and made a complaint of sexual abuse against Defendant. With regard to the laptop, Ryal stated that Belcher told investigators that the computer's internet history contained

---

[3] *Id.* at 04:09.

[4] The application, affidavit, search warrant, and return were introduced into evidence at the time of hearing as Government's Exhibit 5.

numerous gay teen porn websites. Prior to obtaining the search warrant, Ryal spoke with Belcher, who told him that she saw images of oral and anal sex acts involving boys around the ages of 13 to 16 on Defendant's computer. The judicial magistrate found probable cause to issue a search warrant for Defendant's laptop computer.

On November 22, 2011, FBI Special Agent Craig Tomlinson submitted an application for a federal search warrant to the undersigned magistrate judge. The application sought authority to search Defendant's laptop computer. The application was supported by an affidavit signed by Tomlinson.[5] Similar to the state search warrant, Tomlinson's affidavit outlined the events of September 17, 2011, including Belcher's and M.R.'s description of websites containing gay teen pornography on Defendant's laptop computer. Finding probable cause, the undersigned issued a federal search warrant for the laptop computer on November 22, 2011.

## V. DISCUSSION

In his motion to suppress, Defendant claims that he did not knowingly and voluntarily waive his *Miranda* rights, and that his subsequent statements to officers were not made voluntarily. According to Defendant, law enforcement failed to properly explain the *Miranda* warnings waiver to him, and factoring in the issue of "alcohol use . . . and his hearing impairment condition, said waiver of Miranda Rights . . . was not knowing or voluntary."[6] Defendant also argues that all evidence related to his laptop computer should be suppressed because it was improperly seized. Defendant asserts that "probable cause did not exists [*sic*] for the granting of the search warrant and that the warrant/affidavit was void of critical factors for the Judge to consider, to-wit, law enforcement's review of the

---

[5] The application, including attachments and affidavit, and search warrant were introduced into evidence at the time of hearing as Government's Exhibit 6.

[6] Memorandum in Support of Motion to Suppress Statement and Lap Top Computer (docket number 20-1) at 3; ¶ 8.

lap top pre-warrant request."[7]    The Government disputes Defendant's claims and, alternatively, argues that the search falls within the good faith exception found in *Leon*.

### A.  *Waiver of Miranda Rights*

The Court will first address whether Defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights.  It is undisputed that Defendant was read a *Miranda* warning prior to questioning.  It is also undisputed that Defendant signed the *Miranda* waiver after inquiring what the waiver meant.  *See* Government's Exhibit 2. Nevertheless, Defendant argues that his waiver of *Miranda* rights was not voluntary. Specifically, Defendant argues that  his waiver was not voluntary because he "believed he was in custody" when he was taken to the police station for questioning.  Defendant also argues that his waiver was not knowing and voluntary because he received an insufficient explanation of the *Miranda* waiver from Investigator Prochaska, used alcohol prior to questioning, and has a hearing impairment.

### 1.    *Was Defendant in Custody when Interviewed by Law Enforcement?*

It is unclear to the Court why Defendant's belief that he was in custody at the time of his questioning has any relevance in the matter.  If Defendant was in custody at the time of questioning, then the investigators were required to give Defendant the *Miranda* warnings, which they did.  If on the other hand, Defendant was not in custody at the time of questioning, then the investigators were not required to give Defendant the *Miranda* warnings.  *See United States v. Sanchez*, ___ F.3d ___, 2012 WL 1207264 at *2-*3 (8th Cir. 2012) (providing that law enforcement must inform suspects of their Miranda rights before subjecting them to a custodial interrogation, but Miranda warnings are not required if the suspect is not in custody during a police interview).  Nevertheless, because the Government addressed the issue of custody, the Court will analyze whether Defendant was in custody at the time of his interview.

---

[7] *Id*. at 8; ¶ 27.

To determine whether a defendant is in custody for *Miranda* purposes, courts look to "the totality of circumstances confronting the defendant at the time of the interview, and ask[] 'whether a reasonable person in his position would consider his freedom of movement restricted to the degree associated with formal arrest.'" *United States v. Huether*, ___ F.3d ___, 2012 WL 752331 at *3 (8th Cir. 2012) (quoting *United States v. Flores-Sandoval*, 474 F.3d 1142, 1146 (8th Cir. 2007)). In determining whether a defendant is in custody, the Eighth Circuit Court of Appeals has identified six non-exclusive factors for courts to consider:

> (1) whether the suspect was informed that he was free to leave and that answering was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect initiated contact or voluntarily acquiesced; (4) whether strong arm tactics or strategies were employed; (5) whether the atmosphere was police dominated; or, (6) whether the suspect was placed under arrest at the end of questioning.

*Flores-Sandoval*, 474 F.3d at 1146-47 (citing *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)). In considering these factors, "[t]he first three indicia are mitigating factors, which, if present, mitigate against the existence of custody at the time of questioning. Conversely, the last three indicia are aggravating factors which, if present, aggravate the existence of custody." *United States v. Axsom*, 289 F.3d 496, 500-01 (8th Cir. 2002). "The inquiry is an objective one, without consideration of the participants' subjective views." *Huether*, 2012 WL 752332 at *3.

Applying the factors to the interview with Defendant, the Court finds that: (1) Investigator Prochaska read Defendant his *Miranda* rights and had Defendant sign a waiver of those rights; (2) Prochaska told Defendant that he was not under arrest, the door was unlocked, and he was free to leave at anytime; (3) Defendant was not restrained during the interview; (4) Defendant voluntarily acquiesced to Prochaska's questioning; (5) no strong arm tactics or strategies were employed during the questioning; and (6) Defendant was not placed under arrest at the end of questioning. Furthermore,

Defendant presents no evidence that he was intoxicated or unable to hear the investigators during questioning. With regard to alcohol consumption, Defendant told law enforcement that he had one alcoholic beverage around 12:00 a.m. He was interviewed at 4:00 a.m., and showed no signs of intoxication. At the suppression hearing, Prochaska testified that he did not smell alcohol on Defendant when he interviewed him. Taking into consideration the totality of the circumstances, the Court concludes that Defendant was not in custody when he was questioned by law enforcement because a reasonable person in Defendant's position would not consider his or her freedom of movement restricted to the degree associated with formal arrest. *See Flores-Sandoval*, 474 F.3d at 1146.

Interestingly, because Defendant was not in custody at the time of his interview, it was unnecessary for law enforcement to give Defendant a *Miranda* warning. *See Sanchez*, ___ F.3d ___, 2012 WL 1207264 at *3 (providing that *Miranda* warnings are not required for a suspect who is not in custody). Accordingly, no "waiver" is required. Nevertheless, the Court will address the arguments of the Defendant and Government on the waiver issue.

### 2. Was Defendant's Waiver of Miranda Rights Knowing and Voluntary?

To be voluntary, knowing, and intelligent, a defendant's waiver of *Miranda* rights must meet two requirements. First, the waiver must be "'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Second, the defendant must waive his or her rights with "'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id*. In determining whether a waiver is valid, courts consider the totality of the circumstances. *Id*.

Additionally, the waiver need not be an express waiver. *Berghuis v. Thompkins*, 560 U.S. ___ (2010), 130 S. Ct. 2250, 2261 (2010). "[A] waiver of *Miranda* rights may be implied through 'the defendant's silence, coupled with an understanding of his rights

and a course of conduct indicating waiver.'" *Id.* (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). In other words, where it can be shown that "a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id.* at 2262. In *Berghuis*, the United States Supreme Court concluded that:

> Although *Miranda* imposes on the police a rule that is both formalistic and practical when it prevents them from interrogating suspects without first providing them with a *Miranda* warning, it does not impose a formalistic waiver procedure that a suspect must follow to relinquish those rights. As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protections those rights afford.

*Id.* (Citations omitted.)

Here, there is no evidence that law enforcement intimidated, coerced, or deceived Defendant to get him to waive his *Miranda* rights. Indeed, Defendant agreed to be interviewed at the police station. Moreover, Defendant was told by law enforcement that he was not under arrest, the door to the interview room was unlocked, and he was free to leave at anytime. Accordingly, the Court concludes that Defendant's waiver of his *Miranda* rights was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421.

Turning to the second requirement for a knowing, voluntary, and intelligent waiver of *Miranda* rights, the record reflects that: (1) Investigator Prochaska read Defendant his Miranda rights; (2) Defendant reviewed the waiver form; (3) Defendant asked Prochaska a question about the form and received an explanatory answer[8]; (4) Defendant expressly

---

[8] When Defendant asked Prochaska what the Miranda waiver form meant, Prochaska answered that:

> you read the statements, you are willing to make a statement and answer

(continued...)

waived his rights by signing the waiver form; and (5) Defendant impliedly waived his rights by answering the investigators' questions. Moreover, Defendant clearly understood his *Miranda* rights because he invoked his rights and refused to give the investigators a statement, thereby ending the interview. Accordingly, the Court concludes that Defendant fully understood "the nature of the right being abandoned and the consequences of the decision to abandon it[,]" when he waived his *Miranda* rights.

In considering Defendant's assertions that his alcohol use and hearing impairment caused his waiver to be involuntary, the Court is unconvinced by these arguments. While Defendant admitted drinking one alcoholic beverage around 12:00 a.m., his interview was conducted around 4:00 a.m. There is no evidence that Defendant was intoxicated at the time of his interview. Defendant did not smell of alcohol, slur his words, or otherwise appear intoxicated. The Court concludes that Defendant's prior use of alcohol had no apparent effect on the "knowing and intelligent" waiver of his *Miranda* rights. *See United States v. Howard*, 532 F.3d 755, 763 (8th Cir. 2008) (to render a statement involuntary, a defendant's intoxication must cause his will to be overborne). Similarly, at the outset of the interview, Defendant mentioned that he needed the investigators to speak up because

---

[8](...continued)

> questions, basically what its saying is that after you sign this its your understanding that if you talk to us that you have the right to not talk to us and saying that you can stop at anytime and call a lawyer if you need to.

Government's Exhibit 1; Defendant's videotaped interview at 03:59. Defendant argues that Prochaska's answer "was NOT, a viable and legitimate explanation of said Miranda Warnings to this defendant, for said Warnings contain much, much, more content then, 'you can talk to us or not,' including what you say as a person can be used against you in a court of law later." Defendant's Memorandum (docket number 20-1) at 3; ¶ 8. The Court is unpersuaded by Defendant's argument. At the outset of the interview, Prochaska read Defendant his *Miranda* rights, provided him with a written copy of the rights and waiver, and asked Defendant to review the written information. Contrary to Defendant's assertion, Prochaska answered Defendant's question about the waiver by telling Defendant more than "you can talk to us or not." Prochaska also told Defendant that he had the right not to talk to law enforcement, could stop talking to law enforcement at anytime, and could call a lawyer if he needed a lawyer. Following this answer, Defendant did not ask for any further clarification or any further questions. Instead, Defendant signed the waiver form. Based on the foregoing circumstances, the Court believes Prochaska sufficiently answered Defendant's question regarding the waiver form.

he had some difficulty hearing. The investigators complied with Defendant's request, and Defendant did not mention or indicate that he had any difficulty hearing for the remainder of the interview. Therefore, the Court concludes that Defendant's hearing impairment had no apparent effect on the "knowing and intelligent" waiver of his *Miranda* rights.

In summary, after considering the totality of the circumstances, the Court concludes that Defendant's waiver of his *Miranda* rights was voluntary, knowing, and intelligent.

### B. Seizure of the Laptop Computer and the State Search Warrant

Defendant argues that all evidence related to his laptop computer should be suppressed because it was improperly seized and the search warrant for the laptop lacked probable cause. Specifically, Defendant asserts that "the computer that he had a possessory and proprietary interest in was stolen and or taken without his permission to law enforcement by B.B. & M.R. . . . While law enforcement debriefed B.B. & M.R. Investigators opened up and viewed said lap top computer in the presence of B.B. & M.R."[9] Defendant contends that the actions of Belcher, M.R., and the investigators constitutes a "pre-warrant" seizure and partial search of the laptop, and requires the seizure of the computer to "be viewed via a warrantless search."[10] Defendant also argues that the search warrant obtained by law enforcement on September 19, 2011, lacked probable cause. Specifically, Defendant asserts that:

> Upon reflection and review of the four corners of the affidavit, the defendant would allege that probable cause did not exists [sic] for the granting of the search warrant and that the warrant/affidavit was void of critical facts for the Judge to consider, to-wit, law enforcement's review of the lap top pre-warrant request.

Defendant's Memorandum (docket number 20-1) at 8; ¶ 27.

---

[9] Defendant's Memorandum (docket number 20-1) at 6; ¶ 21.

[10] *Id.* at 7; ¶ 22.

## 1.   Did Law Enforcement Improperly Seize Defendant's Laptop Computer?

"The Fourth Amendment prohibits unreasonable searches and seizures. Absent some well-settled exception, unconsented warrantless searches are unreasonable." *United States v. Miller*, 152 F.3d 813, 815 (8th Cir. 1998). "The Fourth Amendment, however, does not extend to private searches that are neither instigated by nor performed on behalf of a governmental entity." *United States v. Starr*, 533 F.3d 985, 994 (8th Cir. 2008) (citation omitted). The review of materials following a private search by the government does not violate the Fourth Amendment if "the government intrusion goes no further than the private search." *Id.*; *see also Miller*, 152 F.3d at 815 (In order "to be a Fourth Amendment search, a governmental intrusion must infringe on a legitimate expectation of privacy. Because a private search frustrates such an exception, an ensuing police intrusion that stays within the limits of the private search is not a search for Fourth Amendment purposes.") (Citations omitted.)

Here, Belcher and M.R. brought Defendant's computer to the police station from Belcher's residence, where it was located and used by M.R. In his memorandum, Defendant admits that M.R. had permission to use the computer.[11] At the police station, Belcher told the investigators that M.R. brought to her attention "some stuff" he had found on Defendant's computer, and then told her that Defendant sexually abused him. Belcher stated that Defendant's computer was "laying around" in her residence that evening, so she checked it, and found a "history of gay porn sites." During the interview, M.R. opened the laptop and began using it. At 2:34 a.m., while questioning M.R., Prochaska slightly moved the laptop and touched the touchpad. At 2:35 a.m., M.R. used the computer to show the investigators how he found the history with "gay teen porn" in an internet search engine. At 2:40 a.m., the computer screen turned black. At 2:48 a.m., Prochaska moved the laptop and touched the touchpad to bring the computer back to life. Prochaska handled the computer and looked at the computer screen for approximately 17 seconds. At the

---

[11] *See* Defendant's Memorandum (docket number 20-1) at 6; ¶ 19.

suppression hearing, Prochaska testified that he did not remember what he saw on the computer screen, and stated that whatever was on the screen was not anything "new" from what had already been shown to him at 2:35 a.m. by M.R. Based on the totality of the circumstances, it is clear that law enforcement did not violate the Fourth Amendment by looking at Defendant's laptop during the interview with M.R., because the governmental intrusion went "no further than the private search." *Starr*, 533 F.3d at 994.

Following the interview with M.R., no law enforcement officers looked at Defendant's laptop until Investigator Ryal obtained the search warrant on September 19, 2011, a mere two days after the early morning interviews. Furthermore, when they interviewed Defendant, the investigators sought Defendant's consent to keep his laptop pending obtaining a search warrant. Defendant did not consent to the investigators' request. Citing probable cause and exigent circumstances, the investigators told Defendant they intended to keep his laptop pending the search warrant. Contrary to Defendant's concerns, the investigators actions were permitted under the Fourth Amendment. In *United States v. Clutter*, ___ F.3d ___, 2012 WL 987325 (8th Cir. 2012), the Eighth Circuit found that law enforcement officers could seize computers pending the issuance of a search warrant, when they determined that there was probable cause to believe that the computers contained evidence of child pornography. *Id.* at *3. *See also United States v. Place*, 462 U.S. 696, 701 (1983) ("Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it, or some other recognized exception to the warrant requirement is present."); *United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009) (Providing that seizure of a computer "to ensure that the hard drive was not tampered with before a warrant was obtained" did not violate the Fourth Amendment.). The Court concludes that probable cause and exigent circumstances, i.e., information provided by

Belcher and M.R. to law enforcement that the internet history on Defendant's laptop contained child pornography, permitted the investigators to keep Defendant's computer until a search warrant could be obtained. *See Clutter*, 2012 WL 987325 at *3.

In summary, after considering the totality of the circumstances, the Court concludes that law enforcement did not improperly seize Defendant's laptop computer in violation of the Fourth Amendment.

### 2. *Was the Search Warrant Supported by Probable Cause?*

The Fourth Amendment to the United States Constitution protects persons and their houses against unreasonable searches and seizures. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Stated otherwise:

> If an affidavit in support of a Search Warrant "sets forth
> sufficient facts to lead a prudent person to believe that there is
> a 'fair probability that contraband or evidence of a crime will
> be found in a particular place,'" probable cause to issue the
> warrant has been established.

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As such, the Court examines the sufficiency of a search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citing *United States v. Solomon*,

432 F.3d 824, 827 (8th Cir. 2005)). The totality of the circumstances is considered in determining whether probable cause was established to issue a search warrant. *Id.* at 631 (citation omitted).

When, as here, an issuing judge relies solely on the written application to issue a search warrant, "'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Solomon*, 432 F.3d 824, 827 (quoting *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999), in turn quoting *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)); *see also United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006) ("Where there is no evidentiary hearing before the magistrate judge, the probable cause determination must be based upon 'only that information which is found within the four corners of the affidavit.'" (quotations omitted)); *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982) ("[A]t the time the warrant was applied for, the issuing magistrate relied solely on the affidavit which was presented to him, and that no evidence was adduced before the magistrate. In these circumstances, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.").

Here, the four corners of the affidavit contained information obtained from Belcher and M.R. during the September 17, 2011 interview with Investigators Prochaska and Kemna, including seeing gay teen porn websites in the history of the internet browser and finding numerous gay pornography websites in the internet history. The affidavit also contained information from a phone conversation Investigator Ryal had with Belcher on September 19, 2011. In that conversation, Belcher told Ryal that she saw images of oral and anal sex acts involving boys around the ages of 13 to 16 on Defendant's computer. In applying a totality of the circumstances analysis, the state judicial magistrate made a practical, common-sense decision that there was a fair probability that evidence of a crime could be found on Defendant's laptop computer. *Gates*, 462 U.S. at 238. I believe the

state court magistrate had a substantial basis for reaching that conclusion. *Id*. at 238-39 ("the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed") (citing *Jones v. United States*, 362 U.S. 257, 271 (1960)). Accordingly, I respectfully recommend that the district court reject Defendant's argument that the search warrant of September 19, 2011 lacked probable cause.

### 3. *Would the Leon Good Faith Exception Apply?*

The Government also argues that the good faith exception found in *United States v. Leon*, 468 U.S. 897 (1984), is applicable in this case. For the reasons set forth above, I believe that it is unnecessary for the district court to address the good faith exception, since there existed probable cause for the search warrant. Nonetheless, I will address the issue in case the district court disagrees with my analysis on probable cause.

The good faith exception provides that disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant. *Leon*, 468 U.S. at 922. The Government may not rely on the good faith exception, however, if one of four circumstances are present.

> The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

*Grant*, 490 F.3d at 632-633 (citing *Leon*, 468 U.S. at 923).

Defendant did not file a written reply to the Government's argument that the good faith exception in *Leon* applies to the September 19, 2011 search warrant for Defendant's laptop computer. Considering the four exceptions to the good faith exception, the Court believes that circumstances 1, 2, and 4 are inapplicable. There is no assertion by Defendant or evidence in the record that: (1) The affidavit in support of the search warrant included any false statements that could mislead the judge; (2) the judicial magistrate "wholly abandoned his judicial role" in issuing the search warrant; or (3) the warrant was "so facially deficient" that Ryal would believe the warrant was not valid.[12]

Turning to circumstance 3, when assessing the good faith of a police officer who executed a warrant, courts look to the totality of the circumstances, "'including any information known to the officers but not presented to the issuing judge.'" *United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007) (quoting *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001)). Here, Investigator Ryal consulted with Investigators Prochaska and Kemna, and learned that Belcher and M.R. told Prochaska and Kemna that they saw gay teen porn websites in the history of the internet browser and found numerous gay pornography websites in the internet history of Defendant's computer. Ryal spoke with Belcher, who told him that she saw images of oral and anal sex acts involving boys around the ages of 13 to 16 on Defendant's computer. With this information, an application for search warrant was prepared and submitted to a state magistrate judge. After reviewing the application, the judicial magistrate found probable cause and issued a search warrant.

I believe that Investigator Ryal relied in good faith on the magistrate's determination that there was probable cause to issue a warrant. Furthermore, I believe that his good faith reliance on the validity of the search warrant was objectively reasonable.[13] Accordingly,

---

[12] "A warrant is facially deficient if it lacks detail as to the place to be searched or the objects to be found." *United States v. Guzman*, 507 F.3d 681, 686 (8th Cir. 2007). Here, Defendant offers no evidence that the search warrant lacked specificity as to the search of Defendant's laptop computer.

[13] "Ordinarily, a police officer cannot be expected to question a judge's probable cause
(continued...)

even *if* the district court finds that probable cause was lacking for the issuance of the search warrant on September 19, 2011, the search warrant nonetheless falls within the good faith exception found in *Leon*.[14]

### C. The Federal Search Warrant

In his Amendment to: Motion to Suppress: Statement and Lap Top Computer (docket number 20), Defendant submits:

> Counsel did not address the federal search warrant, for common sense would dictate, that the federal warrant, to a large degree must be built upon the prior State Search Warrant, in the humble opinion of defense counsel.

> Counsel would argue that if indeed the Court finds legal flaws via the State Search Warrant, these flaws must carry over to the federal warrant, for the State Warrant, was indeed the groundwork for the later federal search warrant via the computer in question. Thus, defense counsel amends the prior motion to suppress, to include and incorporate all such arguments to application of the State and Federal Search Warrants, involved in this case.

Defendant's Amendment to Motion to Suppress (docket number 20) at 1; ¶¶ 2, 3. In his memorandum in support of the motion to suppress, attached to the amendment to the motion to suppress, Defendant provides no argument with regard to the federal search warrant. Apparently, as Defendant stated in his amendment to the motion to suppress, he is simply incorporating the arguments of the state warrant application to the federal search

---

[13](...continued)
determination." *United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991).

[14] The issues of probable cause and the good faith exception may be addressed by the district court in either order. That is, if the district court finds that probable cause existed for the issuance of the search warrant, then it need not address the *Leon* issue. On the other hand, if the district court concludes that the *Leon* good faith exception is applicable, then it need not address the issue of whether the search warrant is supported by probable cause. *See, e.g.*, *United States v. Pruett*, 501 F.3d 976, 979 (8th Cir. 2007) ("If the District Court was correct in concluding that the *Leon* good-faith exception to the exclusionary rule applies, it is unnecessary for us to engage in a probable-cause analysis."); *United States v. Ross*, 487 F.3d 1120, 1122 (8th Cir. 2007); *United States v. Puckett*, 466 F.3d 626, 629 (8th Cir. 2006).

warrant application. Therefore, because the Court concluded that no constitutional violations occurred with regard to the state search warrant, the Court also believes that the federal search warrant was supported by probable cause.[15] Furthermore, as discussed in section *V.B.3*, even *if* the district court finds that probable cause was lacking for the issuance of the federal search warrant on November 22, 2011, the search warrant nonetheless falls within the good faith exception found in *Leon*.

## VI. SUMMARY

In summary, the Court concludes that Defendant was not in custody when he was questioned by law enforcement because a reasonable person in Defendant's position would not consider his or her freedom of movement restricted to the degree associated with formal arrest. *See Flores-Sandoval*, 474 F.3d at 1146. The Court also concludes that Defendant understood his *Miranda* rights, and he voluntarily waived those rights. Defendant's waiver of his *Miranda* rights was "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Vinton*, 631 F.3d at 483. I believe that Defendant had "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* The Court further concludes that law enforcement did not improperly seize Defendant's laptop computer in violation of the Fourth Amendment. *See Place*, 462 U.S. at 701. Additionally, I believe that both the state and federal the search warrant applications would lead a prudent person to believe that there was a "fair probability that contraband or evidence of a crime" could be found on Defendant's laptop computer. *Grant*, 490 F.3d at 631. In considering the totality of

---

[15] Similar to the state search warrant, the affidavit attached to the federal search warrant application outlined the events of September 17, 2011, including Belcher's and M.R.'s discussion of internet history with websites containing gay teen pornography on Defendant's laptop computer. Additionally, the affidavit contained information from a later interview with M.R. by Child Protection Services, where M.R. stated that Defendant had shown him pictures of "gay boys naked" on Defendant's computer. In applying a totality of the circumstances analysis, I made a practical, common-sense decision that there was a fair probability that evidence of a crime could be found on Defendant's laptop computer. *Gates*, 462 U.S. at 238. Therefore, Defendant's argument that the federal search warrant lacked probable cause should be rejected.

the circumstances, both the state judicial magistrate and I properly found probable cause to support the issuance of the state search warrant on September 19, 2011, and the federal search warrant on November 22, 2011. *Gates*, 462 U.S. at 238. Even *if* probable cause was otherwise lacking, however, law enforcement acted in good faith on our determination that there was probable cause to issue the warrants, and that reliance was objectively reasonable. *Leon*, 468 U.S. at 922. Therefore, Defendant's motion to suppress should be denied.

## VII.  RECOMMENDATION

For the reasons set forth above, I respectfully **RECOMMEND** that the Motion to Suppress Statement and Lap Top Computer (docket number 16) filed by Defendant, as amended on April 1, 2012 (docket number 20), be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on April 3, 2012.*

DATED this _19th_ day of April, 2012.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ‖ | |
| Plaintiff, | ‖ | No. 12-CR-3011-LRR |
| vs. | ‖ | **ORDER** |
| MICHAEL GOODALE, | ‖ | |
| Defendant. | ‖ | |

_____

## I. INTRODUCTION

The matter before the court is Defendant Michael Goodale's Objections (docket no. 31) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 28), which recommends that the court deny Defendant's "Motion to Suppress" ("Motion") (docket no. 16).

## II. RELEVANT PROCEDURAL HISTORY

On March 7, 2012, the government filed a five-count Indictment (docket no. 2) against Defendant. Counts 1 and 2 of the Indictment charge Defendant with knowingly crossing a state line with the intent to engage in a sexual act with a person under the age of twelve years. Such offense is a violation of 18 U.S.C. § 2241(c). Counts 3 and 4 of the Indictment charge Defendant with knowingly transporting a person who had not attained the age of eighteen years across a state line with the intent that such person engage in criminal sexual activity. Such offense is a violation of 18 U.S.C. § 2423(a). Finally, Count 5 of the Indictment charges Defendant with knowingly accessing with intent to view visual depictions of minors engaged in sexually explicit conduct. Such offense is a violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2).

On March 25, 2012, Defendant filed the Motion. On April 1, 2012, Defendant filed an Amendment (docket no. 20) to the Motion. On April 2, 2012, the government filed a

Resistance (docket no. 22). On April 3, 2012, Judge Scoles held a hearing on the Motion. Defendant appeared in court with his attorney, Mark R. Brown. Assistant United States Attorney Mark A. Tremmel represented the government. On April 19, 2012, Judge Scoles issued the Report and Recommendation, which recommends that the court deny the Motion. On April 27, 2012, Defendant filed his Objections. The Objections and Report and Recommendation are fully submitted and ready for decision.

### III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

### IV. ANALYSIS

Defendant objects to Judge Scoles's finding that Defendant waived his *Miranda*[1] rights prior to making statements to law enforcement. Defendant also objects to Judge Scoles's finding that there was no Fourth Amendment violation concerning Defendant's laptop computer. Having conducted the required de novo review of the objected-to portions

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

of the Report and Recommendation, the court deems it appropriate to overrule Defendant's Objections and adopt the Report and Recommendation.

### A. *Defendant's Statements to Law Enforcement*

In the Motion, Defendant contends that the court should suppress his statements to law enforcement during the September 17, 2011 interview because he did not voluntarily, knowingly and intelligently waive his *Miranda* rights. Defendant also argues that his statements were not voluntary. In the Report and Recommendation, Judge Scoles finds that Defendant was not in custody at the time of the interview, and, consequently, "it was unnecessary for law enforcement to give Defendant a *Miranda* warning." Report and Recommendation at 9. Judge Scoles further finds that Defendant's waiver of his *Miranda* rights was voluntary, knowing and intelligent. In his Objections, Defendant notes that "the relevant facts do not appear to be in much contention." Objections at 4. Defendant contends that, based on the undisputed facts, he was in custody, his waiver of his *Miranda* rights was not knowing, voluntary and intelligent and his statements were not voluntary.

### 1. *Custody*

Defendant argues that he was in custody because police drove him to the police station in a "marked squad car," law enforcement conducted the interview "in a small interview room with a door lock visible" and one of the officers "seemed to position himself by the doorway exit." *Id.* at 5. Defendant acknowledges that law enforcement told him that he was "not under arrest and that the door [was] open and that he[ was] free to leave the room." Memorandum in Support of Motion (docket no. 16-1) at 4. Despite law enforcement telling him that he was free to leave, however, Defendant contends that he "believed that he was in custody." *Id.* The court finds that Defendant's arguments are unavailing.

"Officers must inform suspects of their *Miranda* rights before subjecting them to custodial interrogations." *United States v. Sanchez*, 676 F.3d 627, 630 (8th Cir. 2012). A suspect is in custody if "a reasonable person in his position would consider his freedom

3

of movement restricted to the degree associated with formal arrest." *United States v.*
*Muhlenbruch*, 634 F.3d 987, 995-96 (8th Cir.) (quoting *United States v. Flores-Sandoval*,
474 F.3d 1142, 1146 (8th Cir. 2007)) (internal quotation mark omitted), *cert. denied*, 132
S. Ct. 228 (2011). The Eighth Circuit Court of Appeals considers a nonexclusive list of
factors when determining whether a suspect is in custody:

> (1) whether the suspect was informed at the time of questioning
> that the questioning was voluntary, that the suspect was free to
> leave or request the officers to do so, or that the suspect was
> not considered under arrest; (2) whether the suspect possessed
> unrestrained freedom of movement during questioning;
> (3) whether the suspect initiated contact with authorities or
> voluntarily acquiesced to official requests to respond to
> questions; (4) whether strong arm tactics or deceptive
> stratagems were employed during questioning; (5) whether the
> atmosphere of the questioning was police dominated; or,
> (6) whether the suspect was placed under arrest at the
> termination of the questioning.

*Sanchez*, 676 F.3d at 630 (quoting *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir.
1990)). The Eighth Circuit has noted that the first factor "weighs heavily in favor of
noncustody when officers clearly inform a suspect that [he] is free to leave or decline
questioning." *Id.* at 631 (citing *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir.
2004) (noting that there is "no governing precedent of the Supreme Court or [the Eighth
Circuit] . . . hold[ing] that a person was in custody after being clearly advised of his
freedom to leave or terminate questioning")).

In *Muhlenbruch*, the Eighth Circuit applied this six-factor test. *Muhlenbruch*, 634
F.3d at 996-97. In that case, the defendant "was confronted by police at his apartment and,
without knowing the reason for their presence, he accompanied the officers to the police
station for questioning." *Id.* at 996. The defendant rode to the police station in the back
seat of a patrol car. *Id.* Once at the station, an officer informed the defendant that he was
not under arrest and he was free to leave. *Id.* Two officers proceeded to interview the

4

defendant in a small room with the door closed. *Id.* The Eighth Circuit held that, "[b]ased on the totality of the circumstances," the defendant was not in custody. *Id.* at 997.

In the Report and Recommendation, Judge Scoles applies the six-factor test and concludes that Defendant was not in custody. After conducting a de novo review, the court agrees. The court notes in particular that, as Defendant concedes in his Memorandum in Support of the Motion, law enforcement "expressed to [him] that he[ was] not under arrest and that the door [was] open and that he[ was] free to leave the room." Memorandum in Support of Motion at 4. Thus, the first factor "weighs heavily in favor of noncustody." *Sanchez*, 676 F.3d at 631. The court further notes that this case is factually similar to *Muhlenbruch*—Defendant rode to the police station in a squad car, law enforcement told him he was free to leave and then law enforcement proceeded to interview him in a small room with the door closed. "Based on the totality of the circumstances," the court finds that Defendant was not in custody during the September 17, 2011 interview. *Muhlenbruch*, 634 F.3d at 997. Because Defendant was not in custody, law enforcement officers were not required to give Defendant his *Miranda* warnings, and, consequently, Defendant's argument that he did not voluntarily, knowingly and intelligently waive his *Miranda* rights is without merit.

### 2. Waiver

Even if the court was to find that Defendant was in custody during the September 17, 2011 interview, Defendant's statements to law enforcement would nevertheless be admissible because Defendant knowingly, voluntarily and intelligently waived his *Miranda* rights. In his Objections, Defendant argues that his waiver was not knowing and voluntary because: (1) the interview was very early in the morning; (2) he had consumed alcohol several hours prior to the interview; (3) he has a hearing impairment; (4) the interview room was small and one of the officers positioned himself by the doorway exit; and (5) one of the officers inadequately explained his *Miranda* rights after Defendant read the written *Miranda* waiver form and asked for clarification.

5

"There are 'two distinct dimensions' to the inquiry whether a suspect's waiver of his *Miranda* rights was voluntary, knowing, and intelligent." *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir.) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)), *cert. denied*, 132 S. Ct. 213 (2011). "First, the waiver 'must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Id.* (quoting *Moran*, 475 U.S. at 421); *accord United States v. Phillips*, 506 F.3d 685, 687 (8th Cir. 2007). "Second, the suspect must have waived his rights 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* (quoting *Moran*, 475 U.S. at 421); *accord Phillips*, 506 F.3d at 687.

After conducing a de novo review, the court agrees with Judge Scoles's finding that Defendant knowingly, voluntarily and intelligently waived his *Miranda* rights. The record reflects that Defendant voluntarily accompanied law enforcement to the police station; law enforcement told him that he was free to leave; law enforcement read him his *Miranda* rights; Defendant read the waiver form, and, when he asked for clarification, a law enforcement officer told Defendant that he had the "right to not talk to" the officers, Report and Recommendation at 11 n.8 (quoting Government's Exhibit 1); and Defendant then signed the waiver form. Moreover, Defendant demonstrated that he understood his rights by invoking his right to remain silent approximately ten minutes into the interview. Despite Defendant's assertion that he consumed alcohol several hours prior to the interview, there is no evidence that Defendant was intoxicated at the time of the interview. Finally, the court fails to see why Defendant's hearing impairment would affect the validity of his waiver—Defendant received a written form explaining his *Miranda* rights. Thus, even if Defendant was in custody during the September 17, 2011 interview, his statements are admissible because law enforcement informed Defendant of his *Miranda* rights and he validly waived those rights.

### 3. *Voluntary statement*

Although it is not clear from Defendant's Motion or his Objections, it appears Defendant is also arguing that, even if he was not in custody, the court should suppress his statements because they were involuntary. In so arguing, Defendant points to the same circumstances that he claims rendered his *Miranda* rights waiver invalid. "'A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination.'" *Muhlenbruch*, 634 F.3d at 997-98 (quoting *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004)). For the same reasons that Defendant's *Miranda* rights waiver is valid, the court finds that Defendant's statements were voluntary, and, therefore, Defendant's statements to law enforcement are admissible.

## B. *Search and Seizure of Laptop Computer*

In the Motion, Defendant also argues that the court should suppress all evidence related to his laptop computer. Specifically, Defendant contends that: (1) Officer Terrance Prochaska conducted a pre-warrant search of Defendant's laptop in violation of the Fourth Amendment; (2) law enforcement seized the laptop in violation of the Fourth Amendment; and (3) the state search warrant lacked probable cause. In his Amendment to the Motion, Defendant also argues that, if the "[c]ourt finds legal flaws via the State Search Warrant, these flaws must carry over to the federal warrant, for the State Warrant, was indeed the groundwork for the later federal search warrant." Amendment at 1. In the Report and Recommendation, Judge Scoles finds that Officer Prochaska did not violate the Fourth Amendment, law enforcement properly seized Defendant's laptop and probable cause supported both the state and federal search warrants. In his Objections, Defendant states that Judge Scoles "did not misapply the law or misunderstand the facts independently, but clearly misapplied the facts to the law." Objections at 4. Defendant maintains that Officer Prochaska conducted a pre-warrant search of the computer in violation of the Fourth Amendment and "any State Court or Federal Court search warrants related to . . .

Defendant's laptop computer . . . had to be obtained upon illegal actions." *Id.* at 3. After conducting a de novo review, the court finds that Defendant's arguments are unavailing.

In his Objections, Defendant fails to acknowledge Judge Scoles's finding that "it is clear that law enforcement did not violate the Fourth Amendment by looking at Defendant's laptop during the interview with M.R., because the governmental intrusion went 'no further than the private search.'" Report and Recommendation at 14 (quoting *United States v. Starr*, 533 F.3d 985, 994 (8th Cir. 2008)). Based on its review of the record, the court agrees with Judge Scoles that there was no Fourth Amendment violation. Although Defendant correctly notes that "Officer Prochaska touched, reviewed and with his eyes visually examined" Defendant's laptop, Objections at 2, he does not allege that M.R. and M.R.'s mother were acting as government agents when they conducted the prior search. Nor does Defendant allege that Officer Prochaska's subsequent search exceeded the search already conducted by M.R. and M.R.'s mother. At the hearing, Officer Prochaska testified that, during his brief handling of Defendant's computer, he saw nothing that M.R. had not already shown him. *See* Transcript (docket no. 29) at 10. Based on these facts, the court finds that there was no Fourth Amendment violation. *See Starr*, 533 F.3d at 995 (holding that police officers did not violate the defendant's Fourth Amendment rights because "the officers only viewed material that had already been viewed" during a search by a private citizen); *see also United States v. Shelton*, 418 F. App'x 514, 517 (7th Cir.) ("[W]e note that the police officers did not violate the Fourth Amendment by looking at what the [computer] technician showed them before securing a warrant. . . . As long as police officers do not exceed the scope of the private search, they may view or replicate the results of that search without violating the Fourth Amendment."), *cert. denied*, 132 S. Ct. 301 (2011).

It is unclear from Defendant's Objections whether he is still pursuing his argument that law enforcement violated his Fourth Amendment rights by seizing the laptop pending issuance of a search warrant. In any case, after conducting a de novo review, the court

8

Case 3:12-cr-03011-LRR   Document 43   Filed 05/31/12   Page 8 of 9
Appellate Case: 12-3972   Page: 34   Date Filed: 04/02/2013 Entry ID: 4020700

agrees with Judge Scoles's finding that the seizure was proper under the circumstances. Law enforcement had probable cause to believe that the computer contained evidence of a crime. If law enforcement had returned the computer to Defendant pending issuance of a search warrant, there was a risk that Defendant would destroy the evidence. Accordingly, law enforcement did not violate the Fourth Amendment by seizing Defendant's laptop prior to obtaining a search warrant. *See United States v. Clutter*, 674 F.3d 980, 985 (8th Cir. 2012).

Finally, it is again unclear from Defendant's Objections whether he maintains that the state and federal search warrants lacked probable cause. In any case, after conducting a de novo review, the court agrees with Judge Scoles that probable cause supported both search warrants. Insofar as Defendant notes that law enforcement failed to include the fact that Officer Prochaska briefly handled and viewed content on Defendant's laptop computer in the state search warrant application, the court finds that such information does not negate probable cause.

## V. CONCLUSION

In light of the foregoing, **IT IS HEREBY ORDERED**:

(1)  The Objections (docket no. 31) are **OVERRULED**;

(2)  The Report and Recommendation (docket no. 28) is **ADOPTED**; and

(3)  The Motion (docket no. 16) is **DENIED**.

**DATED** this 31st day of May, 2012.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

MICHAEL GOODALE,

        Defendant.

No. 12-CR-3011-LRR

**VERDICT FORM—COUNT 1**

---

    We, the Jury, unanimously find the defendant, MICHAEL GOODALE,
__Guilty_____ of the crime charged in Count 1 of the Indictment.
  Not guilty/guilty

/s/Foreperson

_____
FOREPERSON

_____7/5/2012_____
DATE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

vs.

MICHAEL GOODALE,

           Defendant.

No. 12-CR-3011-LRR

**VERDICT FORM—COUNT 2**

---

We, the Jury, unanimously find the defendant, MICHAEL GOODALE, _Guilty_ of the crime charged in Count 2 of the Indictment.

Not guilty/guilty

/s/Foreperson

FOREPERSON

7/5/2012

DATE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 12-CR-3011-LRR |
| vs. | **VERDICT FORM—COUNT 3** |
| MICHAEL GOODALE, | |
| Defendant. | |

_____

We, the Jury, unanimously find the defendant, MICHAEL GOODALE,
_Guilty_____ of the crime charged in Count 3 of the Indictment.
Not guilty/guilty

/s/Foreperson

_____
FOREPERSON

_7/5/2012_____
DATE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

MICHAEL GOODALE,

        Defendant.

No. 12-CR-3011-LRR

**VERDICT FORM—COUNT 4**

We, the Jury, unanimously find the defendant, MICHAEL GOODALE, _Guilty_ of the crime charged in Count 4 of the Indictment.

Not guilty/guilty

/s/Foreperson

FOREPERSON

7/5/2012

DATE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

MICHAEL GOODALE,

        Defendant.

No. 12-CR-3011-LRR

**VERDICT FORM—COUNT 5**

We, the Jury, unanimously find the defendant, MICHAEL GOODALE,
_____Guilty_____ of the crime charged in Count 5 of the Indictment.
Not guilty/guilty

> **NOTE:** If you unanimously find the defendant not guilty of the above crime, have your foreperson write "not guilty" in the above blank space and sign and date this Verdict Form.
>
> If you unanimously and beyond a reasonable doubt find the defendant guilty of the above crime, have your foreperson write "guilty" in the above blank space and sign and date this Verdict Form. Then go on to answer the Interrogatory Form for Count 5.

        /s/Foreperson

        FOREPERSON

        7/5/2012
        DATE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

MICHAEL GOODALE,

        Defendant.

No. 12-CR-3011-LRR

**INTERROGATORY FORM—
COUNT 5**

        If you find the defendant, MICHAEL GOODALE, guilty of the crime charged in Count 5 of the Indictment, please answer this question by placing a check mark (✓) on <u>each</u> of the following spaces that you find the government proved beyond a reasonable doubt.

        We, the Jury, unanimously and beyond a reasonable doubt find that the defendant, MICHAEL GOODALE, accessed with the intent to view the following visual depictions of child pornography:

| | |
|---|---|
| ✓ | Government Exhibit 38 |
| ✓ | Government Exhibit 39 |
| ✓ | Government Exhibit 40 |
| ✓ | Government Exhibit 41 |
| ✓ | Government Exhibit 42 |
| ✓ | Government Exhibit 43 |
| ✓ | Government Exhibit 44 |
| ✓ | Government Exhibit 45 |
| ✓ | Government Exhibit 46 |
| | Government Exhibit 47 |

/s/Foreperson

_____
FOREPERSON

7/5/2012
_____
DATE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 12-CR-3011-LRR |
| vs. | **ORDER** |
| MICHAEL GOODALE, | |
| Defendant. | |

---

### TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    RELEVANT PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . 2

III.   RELEVANT TRIAL EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Victim M.R. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B.    Victim Z.G. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    Laptop Computer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    D.    Defendant's Jailhouse Statements . . . . . . . . . . . . . . . . . . . . . 7

IV.   MOTION FOR JUDGMENT OF ACQUITTAL . . . . . . . . . . . . . . . . . . 7

    A.    Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    B.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        1.    Counts 1 and 2: Aggravated sexual abuse . . . . . . . . . . . . . 8
        2.    Counts 3 and 4: Interstate transportation of a minor with
                   intent to engage in criminal sexual activity . . . . . . . . 10
        3.    Count 5: Accessing with intent to view child pornography . . . 11
    C.    Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.    MOTION FOR NEW TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    A.    Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    B.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        1.    Weight of the evidence . . . . . . . . . . . . . . . . . . . . . . 15
        2.    Admission of evidence obtained from laptop computer . . . . . 16
        3.    Admission of other acts evidence . . . . . . . . . . . . . . . . 17

*C.    Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

*VI.    CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

## *I.    INTRODUCTION*

The matter before the court is Defendant Michael Goodale's "Motion for New Trial" ("Motion") (docket no. 82).

## *II.    RELEVANT PROCEDURAL BACKGROUND*

On March 7, 2012, the government filed a five-count Indictment (docket no. 2) against Defendant. Counts 1 and 2 charged Defendant with aggravated sexual abuse. Such offense is a violation of 18 U.S.C. § 2241(c). Counts 3 and 4 charged Defendant with interstate transportation of a minor with intent to engage in criminal sexual activity. Such offense is a violation of 18 U.S.C. § 2423(a). Finally, Count 5 charged Defendant with accessing with intent to view child pornography. Such offense is a violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2).

On July 2, 2012, a jury trial on Counts 1 through 5 of the Indictment commenced. On July 3, 2012, at the close of all of the evidence, Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The court denied the motion and the case was submitted to the jury. On July 5, 2012, the jury returned guilty verdicts on Counts 1 through 5. *See* Jury Verdicts (docket no. 76). The jury made the specific finding that, as to Count 5, Government Exhibits 38 through 46 constitute child pornography; however, the jury found that Government Exhibit 47 does not constitute child pornography. *See id.* at 6.

On July 17, 2012, Defendant filed the Motion, which requests that the court reconsider its ruling on his oral Rule 29 motion[1] and, alternatively, requests that the court

---

[1] In its Memorandum in Support of the Resistance, the government notes that it is unclear whether Defendant is making a motion for a judgment of acquittal under Rule 29. *See* Memorandum in Support of Resistance (docket no. 84-1) at 8 n.2. The government

(continued…)

2

grant him a new trial pursuant to Federal Rule of Criminal Procedure 33. On July 27, 2012, the government filed a Resistance (docket no. 84) to the Motion. Defendant did not file a reply and the time for doing so has expired. *See* LR 7(g). Thus, the Motion is fully submitted and ready for decision.

### III. RELEVANT TRIAL EVIDENCE[2]

Viewed in the light most favorable to the government, the trial evidence is as follows:

### A. Victim M.R.

Victim M.R. was born on August 30, 1998. M.R.'s mother, Barbara Belcher, was in a relationship with Defendant's brother, Sherman Goodale. Through her relationship with Sherman Goodale, Belcher met and became friends with Defendant. When M.R. was in the fourth grade, he had behavioral problems. Defendant offered to "help out" and began to mentor M.R.

At trial, M.R. testified that he was eight years old when Defendant first sexually abused him. M.R. stated that, at the time, he and his mother lived in a house on Ninth Street in Mason City, Iowa. Defendant was at the house babysitting M.R. After dinner,

---

[1](...continued)

notes that the Motion is captioned as a "motion for new trial" and Defendant "does not provide argument supporting a motion for [a] judgment of acquittal." *Id.* Interestingly, however, Defendant does cite Rule 29(d) and "requests that if the [c]ourt re-visits and grants . . . [D]efendant's Rule 29 Motion-Request as made to the [c]ourt during trial, the [c]ourt also conditionally determine that the current Motion [f]or New Trial be reviewed and granted by the [c]ourt as well." Memorandum in Support of Motion (docket no. 82-1) at 2. Furthermore, Defendant confusingly requests that the court grant him a new trial on the basis that there is insufficient evidence to sustain the jury's guilty verdicts—which is the Rule 29 standard. The court agrees with the government that Defendant's Motion is not a model of clarity. Nevertheless, the court will assume that Defendant is making a motion for a judgment of acquittal.

[2] When relevant, the court relies on and discusses additional facts in conjunction with its analysis of the law.

M.R. went into his room. Defendant followed M.R. into the room, laid down next to him and engaged in inappropriate sexual conduct, including touching M.R.'s penis and kissing M.R.

The sexual abuse continued for approximately five to six years. At some point, Defendant began paying M.R. to perform sexual acts, including masturbation performed by M.R. on Defendant, masturbation performed by Defendant on M.R. and oral sex performed by M.R. on Defendant. Defendant paid M.R. both in cash and in gifts, such as Hot Wheels, food and video games. These sex acts took place in various hotels in Iowa and Minnesota. Belcher, M.R.'s mother, verified that Defendant took M.R. on various overnight trips, including trips to Minnesota. At trial, M.R. testified that, when Defendant took him to these hotels, M.R. expected to engage in sexual activity because they engaged in sexual activity during most of these trips.

When Defendant took M.R. to Minnesota, they stayed in various cities, including Rochester, Austin, Albert Lea and Bloomington. M.R. testified that his first trip to Minnesota with Defendant occurred approximately one year after the sexual abuse began in Iowa. At trial, M.R. did know how many times he went to Minnesota with Defendant, but he recalled two specific trips. The first trip occurred in the summer of 2010 before his birthday. During that trip, Defendant took M.R. to the Mall of America in Bloomington, Minnesota, and they stayed at a Marriott hotel. During this trip, M.R. performed masturbation on Defendant. The second trip took place sometime in 2011 and was also to the Mall of America. M.R. recalled staying at a Marriott hotel again and testified that, during this trip, he and Defendant engaged in sexual activity.

### B. Victim Z.G.

Victim Z.G. was born on August 26, 1998. Z.G. is Sherman Goodale's son and Defendant's nephew. M.R. and Z.G. are friends. In 2006, Z.G.'s mother and Sherman Goodale got divorced. Pursuant to the visitation schedule, Z.G. spent every other

4

weekend with his father. Z.G.'s mother testified that, generally, Sherman Goodale would pick Z.G. up on the weekends and Defendant would bring him back. Z.G.'s mother testified that she had no role in deciding where Z.G. was during his visits with his father.

At trial, Z.G. testified that he was seven years old when Defendant first sexually abused him. Z.G. did not specifically recall the first time. The sexual abuse continued for approximately six to seven years. At some point, Defendant began paying Z.G. to perform sexual acts, including masturbation performed by Z.G. on Defendant, masturbation performed by Defendant on Z.G. and oral sex performed by Defendant on Z.G. Defendant paid Z.G. both in cash and in gifts, such as video games. These sexual acts took place in various hotels in Iowa, including Clear Lake and Mason City, and in Minneosta, including in Rochester and Albert Lea. Z.G. testified that sexual touching took place between him and Defendant in Rochester and Albert Lea; however, Z.G. could not recall the first time Defendant took him to Minnesota to engage in sexual activity.

At trial, Z.G. testified that, at times, he would go to Minnesota with both M.R. and Defendant. During these trips, Z.G. witnessed Defendant and M.R. engaging in sexual activity, including masturbation performed by M.R. on Defendant and oral sex performed by M.R. on Defendant.

### C. Laptop Computer

On September 16, 2011, Defendant stayed the night at Belcher's house with M.R. and Z.G. Defendant brought his laptop computer. At some point during the evening, M.R. used the computer to access the internet to search for information pertaining to a video game called "Grand Theft Auto." When M.R. mistakenly typed "GA" into the search engine, "gay teen chat" auto-populated as a search suggestion. M.R. told his mother, Belcher, what he saw on the computer. In the early morning hours of September 17, 2011, Belcher and M.R. went to the Mason City Police Department. Belcher and M.R. brought the computer with them.

5

Law enforcement subsequently obtained a warrant to search Defendant's laptop computer. In December 2011, Debbie Fenton, a forensic examiner with the Federal Bureau of Investigation, examined the laptop computer. During the course of her examination, Fenton found images that appeared to be sexually explicit pictures of minors. At trial, the government introduced ten images of alleged child pornography—Government Exhibits 38 through 47.[3] Four of the images—Government Exhibits 38 through 41—contain the date the image was created, modified and accessed and the "path," which showed that the images were stored in the "temporary internet cache." As Fenton explained at trial, when a computer user views an image on the internet, the computer hard drive saves a copy of the image in the computer's "temporary internet cache." Fenton recovered four of the images—Government Exhibits 42 through 45—from the "thumb cache database files." Those images do not include date information. Fenton testified that a "thumb cache" is a Windows system file that is created when images and files are viewed with Windows Explorer. When a computer user saves an image on the computer and then accesses the image using Windows Explorer, a thumbnail of the image is saved in the "thumb cache." Fenton testified that, when she recovers an image from the "thumb cache," she cannot determine the date that the original image was created. Finally, two of the images—Government Exhibits 46 and 47—were recovered from "unallocated space" and do not contain date information. Fenton testified that, when a computer user deletes a file, the file is still maintained on the hard drive in "unallocated space." Once deleted, the file may still be recoverable, although it may not be complete.

Fenton also reviewed the "index.dat" file, which is the internet history file that is stored on a Windows system. Fenton's report, Government Exhibit 37, includes a portion

---

[3] The court notes that the jury found that Government Exhibit 47 does not constitute child pornography.

of the search history from February 2011 to September 2011. The search history includes searches for, among other phrases, "naked pedos," "young gay boys" and "naked boys."

### D. Defendant's Jailhouse Statements

Following his arrest, Defendant was housed at the Linn County Jail. While incarcerated, Defendant made phone calls from the jail to his mother in which he admitted that he had accessed child pornography on his laptop computer. Specifically, his mother told Defendant that police had seized the computer. When his mother asked him whether the "sex stuff" he had viewed on the computer involved adults or children, Defendant responded "both."

Defendant also made statements to fellow inmates at the Linn County Jail. At trial, I.C., a cooperating witness, testified that he was housed in the same cell block as Defendant from early March through the first week of April. While they were housed together, Defendant told I.C. that he was in jail because he had sex with his nephew. Specifically, Defendant stated that he had performed various sexual acts with his nephew in hotels in Minnesota, including in Rochester, as well as at Defendant's brother's house and Defendant's mother's house. Defendant also told I.C. that he had child pornography on his computer. Defendant stated that he was charged with having child pornography on his computer but, at trial, his defense would be that the computer was in the custody of various people who could have downloaded the images.

Defendant also made statements to L.J., another cooperating witness. Defendant told L.J. that he had sex with his nephew in various hotels. Defendant specifically mentioned taking his nephew to Minnesota, including to the Mall of America.

### IV. MOTION FOR JUDGMENT OF ACQUITTAL

#### A. Legal Standard

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is

7

insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. *Id.* at 29(c). It is well-settled that jury verdicts are not lightly overturned. *See, e.g.*, *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court must view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt. *Id.* Moreover, the court "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id.* (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). It is not the province of the court to evaluate the credibility of witnesses—that task is for the jury. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004).

### B. Analysis

In his Memorandum in Support of the Motion, Defendant argues that there is insufficient evidence to support the jury's guilty verdicts as to: (1) Counts 1 and 2, which charged Defendant with aggravated sexual abuse; (2) Counts 3 and 4, which charged Defendant with interstate transportation of a minor with intent to engage in criminal sexual activity; and (3) Count 5, which charged Defendant with accessing with intent to view child pornography.

### 1. Counts 1 and 2: Aggravated sexual abuse

Defendant argues that "[t]he entire record appears to be silent regarding the alleged counts of aggravated sexual abuse and the government proving that either child was under the age of 12 upon the alleged acts occurring." Memorandum in Support of Motion at 3. Defendant also notes that there is no allegation that he ever threatened the victims. In response, the government argues that M.R. testified regarding trips to Minnesota that

8

occurred before he turned twelve. The government concedes, however, that Z.G. could not recall any dates or provide any time reference for his trips to Minnesota with Defendant.

Under 18 U.S.C. § 2241(c), "[w]hoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years" is guilty of aggravated sexual abuse. 18 U.S.C. § 2241(c). The use of force is not required. *See United States v. Gabe*, 237 F.3d 954, 961 (8th Cir. 2001) (noting that force is not an element under 18 U.S.C. § 2241(c)). After reviewing the trial evidence, the court finds that there is sufficient evidence to sustain the jury's guilty verdict as to Count 1; however, the court finds that the government presented insufficient evidence as to Count 2.

Count 1 of the Indictment relates to M.R. M.R. testified that Defendant first sexually abused him when he was eight years old. M.R. further testified that, approximately one year after the first instance of sexual abuse, Defendant took him to Minnesota where they engaged in sexual activity. M.R. testified that he and Defendant often engaged in sexual activity while staying at hotels and that M.R. expected to engage in sexual activity when traveling with Defendant. At trial, M.R. recounted a specific trip he took with Defendant to the Mall of America in Minnesota during the summer of 2010. M.R. recalled that the trip took place before he turned twelve years old in August of that year. Based on its review of the evidence, the court finds that there is sufficient evidence to sustain the jury's guilty verdict as to Count 1. *See id.* ("[A] victim's testimony alone is sufficient to persuade a reasonable jury of the defendant's guilt beyond a reasonable doubt." (citing *United States v. Wright*, 119 F.3d 630, 633-34 (8th Cir. 1997))). Thus, the court shall deny the Motion to the extent it seeks a judgment of acquittal on Count 1.

Count 2 of the Indictment relates to Z.G. Z.G. testified that Defendant first sexually abused him when he was seven years old. Z.G. further testified that Defendant took him on trips to Minnesota, including to Albert Lea and Rochester, where they

9

engaged in sexual activity. However, Z.G. did not remember the specific dates of the trips. Unlike M.R., who testified that Defendant took him to Minnesota approximately one year after Defendant first sexually abused him in Iowa, Z.G. could not recall the first time that Defendant took him to Minnesota. In its Memorandum in Support of the Resistance, the government contends that hotel receipts corroborate the victims' testimony that Defendant took them on trips to Minnesota. Four of those hotel receipts document trips prior to August 2010—before both M.R. and Z.G. turned twelve years old. *See* Government Exhibit 12 (docket no. 73-12) (receipt for hotel in Albert Lea, Minnesota, showing check-in date of June 12, 2010); Government Exhibit 13 (docket no. 73-13) (receipt for hotel in Austin, Minnesota, showing check-in date of June 16, 2009); Government Exhibit 15 (docket no. 73-15) (receipt for hotel in Rochester, Minnesota, showing check-in date of May 22, 2010); Government Exhibit 16 (docket no. 73-16) (receipt for hotel in Rochester, Minnesota, showing check-in date of May 9, 2009). Although these hotel receipts indicate that Defendant checked in with a child, the receipts do not identify the child. Thus, the receipts could be evidence of trips Defendant took with M.R. In sum, the court finds that there is insufficient evidence that any of Defendant's trips with Z.G. took place prior to Z.G. "attain[ing] the age of 12 years," 18 U.S.C. § 2241(c). Accordingly, the court shall grant the Motion to the extent it seeks a judgment of acquittal on Count 2.

> 2.    *Counts 3 and 4: Interstate transportation of a minor with intent to engage in criminal sexual activity*

A person violates 18 U.S.C. § 2423(a) if the person "knowingly transports an individual who has not attained the age of 18 years in interstate . . . commerce . . . , with intent that the individual engage in . . . any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2423(a). The use of force is not required. *See id.*

10

Based on the facts described above, the court finds that there is sufficient evidence that Defendant transported both M.R. and Z.G. to Minnesota with the intent to engage in sexual activity that would be illegal under the laws of the State of Minnesota. Unlike Counts 1 and 2, the government was not required to prove that M.R. and Z.G. were under the age of twelve at the time of the trips; rather, 18 U.S.C. § 2423(a) requires only that the victims be under the age of eighteen years. Because both M.R. and Z.G. were born in 1998, neither of them has yet reached the age of eighteen years. Both M.R. and Z.G. testified that Defendant took them on trips to Minnesota where they engaged in sexual activity. Furthermore, there was significant evidence that corroborated the victims' testimony. Belcher, M.R.'s mother, confirmed that M.R. often took trips with Defendant, including trips to Minnesota. Hotel receipts verified that Defendant traveled to Minnesota and several of the receipts indicated that he was accompanied by a child. *See* Government Exhibits 9 through 16 (docket nos. 73-9 through 73-16). Text messages between Defendant and M.R. referenced trips to Albert Lea and the "Mega Mall." Government Exhibit 8 (docket no. 73-8) at 1. Finally, two cooperating witnesses, I.C. and L.J., testified that Defendant admitted to "having sex" with his nephew, Z.G., in Minnesota. Thus, the court finds that there is sufficient evidence to sustain the jury's guilty verdicts as to Counts 3 and 4 and shall deny the Motion to the extent it seeks a judgment of acquittal on those counts.

### 3. *Count 5: Accessing with intent to view child pornography*

A person violates 18 U.S.C. § 2252A(a)(5)(B) if the person:

> knowingly accesses with intent to view . . . any . . . material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . .

11

Case 3:12-cr-03011-LRR   Document 88   Filed 09/24/12   Page 11 of 18
Appellate Case: 12-3972   Page: 52   Date Filed: 04/02/2013 Entry ID: 4020700

18 U.S.C. § 2252A(a)(5)(B).

In the Motion, Defendant raises three arguments regarding the sufficiency of the evidence on Count 5. First, Defendant argues that several of the images "did not contain accurate dates or times per review-receipt by the government's own expert." Memorandum in Support of Motion at 2. Second, Defendant argues that, for those images that are dated, the image-viewed date does not match the dates for any hotel receipts. Finally, Defendant suggests that other individuals had access to the computer, and, thus, there is insufficient evidence that Defendant was the person who accessed child pornography on the computer.

In its Memorandum in Support of the Resistance, the government first argues that, although some of the images are undated, the forensic examiner testified that "examiners often [cannot] recover date information for deleted files" and "[o]ne of the cooperating witnesses testified that [D]efendant had admitted to deleting child pornography images from the computer before law enforcement had seized it." Memorandum in Support of Resistance at 5. The government also points to the internet search history from the computer, which included "searches for 'naked boy pedos' and 'nude preteen boys.'" *Id.* at 6. Next, the government argues that it was not required to prove that Defendant accessed child pornography in a hotel room with the victims present; thus, it is of no consequence that the image-viewed dates do not match hotel receipt dates. Finally, the government notes that, during a phone call with his mother following his arrest, Defendant admitted that there was child pornography on the computer.

Regarding Defendant's first argument, the court finds that, although Government Exhibits 42 through 46 do not contain date information, a reasonable jury could find beyond a reasonable doubt that Defendant accessed those images within a reasonable time of the dates alleged in the Indictment. First, the court notes that four of the images, Government Exhibits 38 through 41, contain date information and those dates are within

the time frame specified in the Indictment. A reasonable jury could conclude that Defendant accessed the other images for which no date information is available during the same time period. Furthermore, Government Exhibit 37 is a report showing a selected portion of the internet search history obtained from Defendant's laptop computer. The report lists searches that occurred between February 2011 and September 2011, which is the same time period alleged in Count 5 of the Indictment. During that time period, searches on Defendant's computer included searches for "naked pedos," "young gay boys" and "naked boys." A reasonable jury could conclude that Government Exhibits 42 through 46 were the results of such searches.

Next, Defendant argues that the image-viewed dates and the hotel receipt dates do not "match." Memorandum in Support of Motion at 3. Defendant's argument is without merit. As the government notes, it was not required to prove at trial that the victims were present at the time Defendant accessed the images constituting child pornography. *See* 18 U.S.C. § 2252A(a)(5)(B).

Finally, the court finds that there is sufficient evidence that Defendant was the individual who accessed the visual depictions of child pornography on the computer. Following his arrest, Defendant admitted to a fellow inmate and his mother that he had child pornography on his computer. Thus, the court finds that there is sufficient evidence to support the jury's guilty verdict as to Count 5. Accordingly, the court shall deny the Motion to the extent it seeks a judgment of acquittal on Count 5.

### C. Summary

For the foregoing reasons, the court finds that there is sufficient evidence to support the jury's guilty verdicts as to Count 1 and Counts 3 through 5. However, the court finds that there is insufficient evidence to support the jury's guilty verdict as to Count 2. Accordingly, the court shall grant in part and deny in part the Motion to the extent it seeks a judgment of acquittal on all counts.

13

## V. *MOTION FOR NEW TRIAL*

### A. *Legal Standard*

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court is granted broad discretion in considering a motion for a new trial. *Peters*, 462 F.3d at 957. A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)) (internal quotation mark omitted). However, the court "should grant a new trial only if 'the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" *Peters*, 462 F.3d at 957 (quoting *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)).

A district court enjoys more latitude in granting new trials under Rule 33 than in granting motions for judgment of acquittal under Rule 29; however, "[m]otions for new trials based on the weight of the evidence are generally disfavored." *Campos*, 306 F.3d at 579. District courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). The court's standard of review differs from the standard that is applied to a motion for judgment of acquittal.

> When a motion for new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is not whether the defendant should be acquitted outright, but only whether he should have a new trial. The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses. If the court concludes that, despite the abstract sufficiency of

14

> the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*Lincoln*, 630 F.2d at 1319; *see also Johnson*, 474 F.3d at 1050-51 (reiterating applicable standard).

### B. Analysis

Defendant raises three arguments in support of his request for a new trial. First, Defendant argues that the weight of the evidence necessitates a new trial on all of the counts. Second, Defendant argues that the court erred by admitting evidence obtained from his laptop computer. Finally, Defendant argues that the court erred by admitting evidence that Defendant sexually abused M.R. and Z.G. in the State of Iowa.

#### 1. Weight of the evidence

Defendant argues that the weight of the evidence is contrary to the verdicts on all counts. Specifically, Defendant argues that each victim's testimony was inconsistent with the other's testimony and the cooperating witnesses' testimony was inconsistent with the victims' testimony. Defendant also notes that each victim waited years before reporting the alleged abuse, despite the "vast avenues that each child would have had . . . to report." Memorandum in Support of Motion at 3.

For the same reasons discussed with respect to the Defendant's motion for a judgment of acquittal, the court finds that the evidence as to Count 1 and Counts 3 through 5 did not "preponderate[] sufficiently heavily against the verdict[s]." *Lincoln*, 630 F.2d at 1319. The government presented overwhelming evidence of Defendant's guilt on those counts and no miscarriage of justice occurred. Accordingly, the court shall deny the Motion to the extent it seeks a new trial on Count 1 and Counts 3 through 5 based on the weight of the evidence.

15

The court has already determined that there is insufficient evidence to sustain the jury's guilty verdict as to Count 2. Under Rule 29(d), "[i]f the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed. The court must specify the reasons for that determination." Fed. R. Crim. P. 29(d). In the event that the Eighth Circuit Court of Appeals reverses the court's ruling that there is insufficient evidence to sustain the jury's guilty verdict as to Count 2, the court finds that the jury's verdict as to Count 2 is "contrary to the weight of the evidence," *Lincoln*, 630 F.2d at 1319, thus necessitating a new trial on that count. Accordingly, the court shall conditionally grant the Motion to the extent it seeks a new trial on Count 2 based on the weight of the evidence.

### 2. *Admission of evidence obtained from laptop computer*

Next, Defendant argues that he is entitled to a new trial because the court erred by admitting evidence that law enforcement obtained in violation of the Fourth Amendment. Specifically, Defendant contends that law enforcement conducted a warrantless search of his laptop computer and, thus, the court should have excluded any evidence obtained from Defendant's computer. Defendant also notes that "[o]thers had custody and control of said computer, pre-arrest of . . . [D]efendant." Memorandum in Support of Motion at 2.

The court previously addressed Defendant's Fourth Amendment argument. *See* May 31, 2012 Order (docket no. 43) (adopting the Report and Recommendation (docket no. 28), which recommended that the court deny Defendant's Motion to Suppress (docket no. 16)). Defendant offers no new argument in the instant Motion. To the extent Defendant is arguing that the court should have excluded evidence obtained from the computer because other individuals had access to the computer, Defendant cites no authority in support of his argument and, as previously discussed, a reasonable jury could conclude that Defendant was the person who accessed child pornography on the computer.

16

Accordingly, the court finds that Defendant's arguments are without merit, and the court shall deny the Motion to the extent it seeks a new trial on this ground.

### 3. *Admission of other acts evidence*

Finally, Defendant argues that the court erred in admitting evidence of uncharged acts—specifically, that Defendant sexually abused M.R. and Z.G. in the State of Iowa. Defendant contends that "[i]t's possible that the weight of the Iowa information or hotel receipts may have confused the jury regarding charges alleged in the [I]ndictment." Memorandum in Support of Motion at 2. Although Defendant does not specifically reference Federal Rule of Evidence 403, it appears that Defendant is arguing that the court should have excluded evidence relating to any instances of sexual abuse in Iowa under such Rule. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[ or] confusing the issues . . . .").

For the reasons set forth in the government's Memorandum in Support of the Resistance, the court finds that Defendant's argument is unavailing. On July 2, 2012, prior to the presentation of evidence, the parties raised this issue before the court. At that time, the court determined that evidence that Defendant sexually abused M.R. and Z.G. in Iowa was admissible. Nothing Defendant argues in the instant Motion leads the court to reconsider its previous ruling. Evidence that Defendant sexually abused each victim in Iowa is highly probative. Each victim testified that the abuse began in Iowa and, over the course of several years, Defendant took each victim to various hotels in Iowa and Minnesota where Defendant engaged in sexual activity with them. The evidence regarding the sexual abuse in Iowa provided the context for the abuse in Minnesota by explaining the relationship between Defendant and each victim and explaining the expectations that Defendant and each victim had during the trips to Minnesota. The court finds that the probative value of such evidence is not substantially outweighed by a danger of unfair

17

prejudice or confusion of the issues, *see* Fed. R. Evid. 403, and Defendant's bare allegation that such evidence may have "confused the jury," Memorandum in Support of Motion at 2, is insufficient to warrant a new trial.

### C.  Summary

Thus, the court finds that the interests of justice do not require the court to grant Defendant a new trial on Count 1 and Counts 3 through 5, and, accordingly, the court shall deny the Motion to the extent it seeks a new trial on those counts.  Pursuant to Rule 29(d), the court conditionally grants Defendant's Motion insofar as it requests a new trial on Count 2.

### VI.  CONCLUSION

In light of the foregoing, the court **HEREBY ORDERS**:

(1)  Defendant's Motion for New Trial (docket no. 82) is **GRANTED IN PART** and **DENIED IN PART**.

(2)  Count 2 of the Indictment is **DIRECTED OUT**.

(3)  In the event that the Eighth Circuit Court of Appeals reverses the court's ruling as to Count 2, the court grants Defendant's Motion for New Trial as to that count pursuant to Federal Rule of Criminal Procedure 29(d).

**IT IS SO ORDERED**.

**DATED** this 24th day of September, 2012.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

18

AO 245B    (Rev. 11/11) Judgment in a Criminal Case
Sheet 1

# United States District Court

## NORTHERN DISTRICT OF IOWA

| UNITED STATES OF AMERICA | JUDGMENT IN A CRIMINAL CASE |
|---|---|
| **v.** | |
| **MICHAEL GOODALE** | Case Number: **CR 12-3011-1-LRR** |
| | USM Number: **12002-029** |
| | **Mark R. Brown** |
| | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s)   <u>1, 3, 4, and 5 of the Indictment filed on March 7, 2012</u>
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2241(c) | Aggravated Sexual Abuse | 08/29/2010 | 1 |
| 18 U.S.C. § 2423(a) | Interstate Transportation of a Minor with Intent To Engage in Criminal Sexual Activity | Sept. 2011 | 3 |
| 18 U.S.C. § 2423(a) | Interstate Transportation of a Minor with Intent To Engage in Criminal Sexual Activity | Sept. 2011 | 4 |

(Continued on next page)

   The defendant is sentenced as provided in pages 2 through _____ 7 _____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☑ <u>The Court directed out Count 2 in an Order filed on September 24, 2012, Document No. 88.</u>

☐ Counts _____ is/are dismissed on the motion of the United States.

   IT IS ORDERED that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material change in economic circumstances.

**December 6, 2012**
Date of Imposition of Judgment

_(signature)_
Signature of Judicial Officer

**Linda R. Reade**
**Chief U.S. District Court Judge**
Name and Title of Judicial Officer

_December 7, 2012_
Date

AO 245B    (Rev. 11/11) Judgment in a Criminal Case
          Sheet 1A

Judgment — Page    2    of     7

DEFENDANT:      **MICHAEL GOODALE**
CASE NUMBER:    **CR 12-3011-1-LRR**

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2) | Accessing Child Pornography | Sept. 2011 | 5 |

AO 245B    (Rev. 11/11) Judgment in Criminal Case
            Sheet 2 — Imprisonment

Judgment — Page   **3**   of   **7**

DEFENDANT:     **MICHAEL GOODALE**
CASE NUMBER:   **CR 12-3011-1-LRR**

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: <u>Life. This term of imprisonment consists of a life term imposed on each of Counts 1, 3, and 4, and a 120-month term imposed on Count 5 of the Indictment, to be served concurrently</u>.

■     The court makes the following recommendations to the Bureau of Prisons:
        **That the defendant be designated to a Bureau of Prisons facility as close to the defendant's family as possible, commensurate with the defendant's security and custody classification needs.**
        **That the defendant participate in the Bureau of Prisons' Residential Sex Offender Treatment Program.**
        **That the defendant participate in a Bureau of Prisons' Vocational Training Program specializing in the culinary arts, carpentry, electrical work, HVAC, and/or welding.**

■     The defendant is remanded to the custody of the United States Marshal.

☐     The defendant shall surrender to the United States Marshal for this district:

       ☐   at   _____ ☐ a.m.   ☐ p.m.   on   _____ .

       ☐   as notified by the United States Marshal.

☐     The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

       ☐   before 2 p.m. on   _____ .

       ☐   as notified by the United States Marshal.

       ☐   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on   _____   to   _____

at   _____ , with a certified copy of this judgment.

_____
                           UNITED STATES MARSHAL

By   _____
                           DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 11/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __4__ of __7__

DEFENDANT:      **MICHAEL GOODALE**
CASE NUMBER:    **CR 12-3011-1-LRR**

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of: <u>**10 years. This term of supervised release consists of a 10-year term imposed on each of Counts 1, 3, 4, and 5 of the Indictment, to be served concurrently.**</u>

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

    The defendant shall not commit another federal, state, or local crime.

    The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

- ■   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

- ■   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

- ■   The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

- ■   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

- ☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)  the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)  the defendant shall support his or her dependents and meet other family responsibilities;

5)  the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)  the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)  the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)  the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

DEFENDANT:     **MICHAEL GOODALE**
CASE NUMBER:   **CR 12-3011-1-LRR**

## SPECIAL CONDITIONS OF SUPERVISION

*The defendant must comply with the following special conditions as ordered by the Court and implemented by the U.S. Probation Office:*

1) The defendant must participate in a mental health evaluation and/or treatment program. This may include participation in a sex offender treatment program or any such similar program offered in the defendant's approved district of residence. The defendant must take all medications prescribed to the defendant by a licensed psychiatrist or physician.

2) The defendant is prohibited from owning or having in the defendant's possession any pornographic materials. The defendant shall neither use any form of pornography or erotica nor enter any establishment where pornography or erotica can be obtained or viewed.

3) The defendant must pay any financial penalty that is imposed by this judgment.

4) The defendant must provide the U.S. Probation Office with access to any requested financial information.

5) The defendant must not incur new credit charges or open additional lines of credit without the approval of the U.S. Probation Office unless the defendant is in compliance with the installment payment schedule.

6) The defendant is prohibited from operating or using photographic equipment, a computer, or any electronic storage device to view or produce any form of pornography or child erotica.

7) The defendant must not use the Internet to view any form of pornography or child erotica via the World Wide Web, a commercial gateway, an Internet Service Provider, Internet Relay Chat channels, or any Internet Protocol address.

8) The defendant shall have no contact with children under the age of 18 (including through letters, communication devices, audio or visual devices, visits, electronic mail, the Internet, or any contact through a third party) without the prior written consent of the probation office. The U.S. Probation Office shall work with the defendant and the defendant's family to set up supervised communications and visits with the defendant's biological and legally adopted children.

9) The defendant is prohibited from places where minor children under the age of 18 congregate, such as residences, parks, beaches, pools, daycare centers, playgrounds, and schools without the prior written consent of the probation office.

10) The defendant must remain in compliance with all sex offender registration and public notification requirements in accordance with the Adam Walsh Child Protection and Safety Act of 2006. The defendant must meet with an appropriate official from either the Bureau of Prisons or the U.S. Probation Office who must explain to the defendant all of the defendant's registration requirements. The defendant must read and sign the Offender Notice and Acknowledgment of Duty to Register as a Sex Offender form.

11) The defendant shall have no contact during the defendant's term of imprisonment or the defendant's term of supervision with the victims identified in the presentence report, and their family members, in person or by a third party. This includes no direct or indirect contact by telephone, mail, email, or by any other means.

12) The defendant shall submit to a search of the defendant's person, residence, adjacent structures, office or vehicle, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the residence or vehicle may be subject to searches pursuant to this condition. This condition may be invoked with or without the assistance of law enforcement, including the U.S. Marshals Service.

13) Any computer and/or electronic storage device the defendant owns or has access to shall be subject to random or periodic unannounced searches and monitoring by a United States Probation Officer. The search may include examinations of the defendant's computer(s) equipment, the retrieval and copying of all data, and any internal or external peripherals, and/or removal of such equipment for inspection. The defendant must allow the U.S. Probation Office to install any hardware or software systems to monitor or filter the defendant's computer use. Prior to installation of any such hardware or software systems, the defendant must allow the U.S. Probation Office to examine the defendant's computer and/or electronic storage device.

Upon a finding of a violation of supervision, I understand the Court may: (1) revoke supervision; (2) extend the term of supervision; and/or (3) modify the condition of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

_____          _____
Defendant                                 Date


_____          _____
U.S. Probation Officer/Designated Witness  Date

AO 245B    (Rev. 11/11) Judgment in a Criminal Case
           Sheet 5 — Criminal Monetary Penalties

DEFENDANT:      **MICHAEL GOODALE**
CASE NUMBER:    **CR 12-3011-1-LRR**

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 400 | $ 0 | $ 253.24 |

☐  The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

■  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(I), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| **Iowa Attorney General's Office Crime Victim Compensation Program State Capitol 1015 East Grand Avenue Des Moines, IA 50319-9901** | | **$253.24** | |

| | | | |
|---|---|---|---|
| **TOTALS** | $ _____ | $ ____253.24____ | |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

■  The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

　　■  the interest requirement is waived for the    ☐  fine    ■  restitution.

　　☐  the interest requirement for the    ☐  fine    ☐  restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B  (Rev. 11/11) Judgment in a Criminal Case
Sheet 6 — Criminal Monetary Penalties

Judgment — Page __7__ of __7__

DEFENDANT: **MICHAEL GOODALE**
CASE NUMBER: **CR 12-3011-1-LRR**

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A ■ Lump sum payment of $ ____400____ due immediately, balance due

     ☐ not later than _____ , or
     ■ in accordance with ☐ C, ☐ D, ☐ E, or ■ F below; or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
     _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
     _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
     term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
     imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ■ Special instructions regarding the payment of criminal monetary penalties:

     While incarcerated, the defendant shall make monthly payments in accordance with the Bureau of Prison's Financial
     Responsibility Program. The amount of the monthly payments shall not exceed 50% of the funds available to the
     defendant through institution or non-institution (community) resources and shall be at least $25 per quarter. If the
     defendant still owes any portion of the financial obligation(s) at the time of release from imprisonment, the defendant shall
     pay it as a condition of supervision and the U.S. Probation Officer shall pursue collection of the amount due, and shall
     request the Court to establish a payment schedule if appropriate. The defendant shall also notify the United States
     Attorney within 30 days of any change of mailing or residence address that occurs while any portion of the financial
     obligation(s) remains unpaid.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

     Defendant and Codefendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# UNITED STATES DISTRICT COURT

## for the Northern District of Iowa

USCA8, No. _____

### NOTICE OF APPEAL

| | | |
|---|---|---|
| United States of America | ) | 12-3011-LRR |
| | ) | |
| Plaintiff | ) | District Court Docket Number |
| | ) | |
| vs. | ) | HON. LINDA R. READE |
| MICHAEL GOODALE | ) | |
| | ) | District Court Judge |
| | ) | |
| Defendant. | ) | |

Notice is hereby given that ___MICHAEL GOODALE___ appeals to the Eighth

Circuit from the: ☑ Judgment & Commitment ☐ Order ___Trial-Sentencing___ entered in this action on ___12-06-12___
(Specify)

x _The Defendant-Michael Goodale_      Trial Counsel-pending motion
Seeking Court Appointed Counsel:      to w/drawal. Def. is seeking
x _____      ct. apt'ed counsel-appeal.
Signature of Defendant's Counsel

     Typed Name of Defendant's Counsel

Linn County Jail 53 3rd Ave. Bridge

     Filed notice for Def. to
( ) honor 14 days-Motion to w/drawal.

| Street Address | Room Number | Telephone Number |
|---|---|---|
| C.R.   Iowa | 52411 | |
| City   State | Zip | Date |

## TRANSCRIPT ORDER FORM
### TO BE COMPLETED BY ATTORNEY FOR APPELLANT

☐ Please prepare a transcript of:      ☐ I am not ordering a transcript because:
☑ Pre-trial proceedings      ☐ Previously Filed
☑ Testimony <u>or</u>      ☐ Other (Specify) _____
☑ Portions thereof
☑ Sentencing
☑ Post Trial Proceedings
☐ Other (Specify)

## CERTIFICATE OF COMPLIANCE

     Appellant hereby certifies that copies of this notice of appeal/transcript order form have been filed/served upon U.S. District Court, court reporter, and all counsel of record, and that satisfactory arrangements for payment of cost of transcripts ordered have been made with the court reporter (FRAP 10(b)).

Method of payment: ☐ Funds, ☑ CJA Form 24 completed and sent to court reporter: _Will be done - Apted Counsel_

x _____      _Assume Appointed -Appellate Counsel shall do so---------_
Attorney's Signature _____ Date

# INFORMATION SHEET
## TO BE COMPLETED BY ATTORNEY FOR APPELLANT

1. Defendant's Address: Presently, Linn County Jail, 53 3rd Ave. Bridge C.R. Iowa 52411

2. Date of Verdict: Sent. 12-06-2012-Verdict: 7-5-12 ☑ Jury ☐ Non-Jury

   Offenses: Agg. Sex-Abuse-18 USC 2241(c)
   Interstate Transportation-minor-18-USC-2423(a)
   Acess Child Porn 18 USC- 2252A(b)(2)

3. Trial Testimony - Number of Days 2-3 _____ Bail Status Def. Detained,
   Sentence and Date Imposed: Life-12-06-2012

4. Appealing: Sentence ☐ Conviction ☐ Both ☑

   Challenging: ☑ Application of Sentencing Guidelines
   ☑ Constitutionality of Guidelines
   ☑ Both Application and Constitutionality

5. Date Trial Transcript ordered by Counsel or District Court: Shall be ordered by apt.atty

   Stenographer in Charge: Patrice Murray

   (Name, Address, Phone) 111 7th Ave. SE C.R. Iowa 52401-2101.

6. Trial Counsel was: ☐ Appointed ☑ Retained

   Does Defendant's financial status warrant appointment of counsel
   on appeal? ☑ Yes ☐ No

   Affidavit of Financial Status filed: 07-09-2012

   Is there any reason why trial counsel should not be appointed as
   counsel on appeal? ☑ Yes ☐ No M. Brown trial counsel-pending motion
   to withdrawal

7. Assistant U.S. Attorney Name & Phone Number: Mark Tremmel-AUSA 111-7th Ave. SE C.R. Ia. 52401.
   U.S. Federal Court House-

# COURT REPORTER ACKNOWLEDGMENT

_____ _____ _____
Date Order Received        Estimated Completion Date        Est Number of Pages

_____ _____
Court Reporter's Signature        Date

February 21, 2008

2